604 So.2d 137 (1992)
STATE of Louisiana, Appellee,
v.
John H. MAJOR, Appellant.
No. 23,843-KA.
Court of Appeal of Louisiana, Second Circuit.
June 24, 1992.
*138 Indigent Defender Office, by John M. Lawrence, Chief Counsel, Shreveport, for appellant.
Richard Ieyoub, Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., Mark A. Perkins, Asst. Dist. Atty., Shreveport, for appellee.
Before HIGHTOWER, VICTORY and BROWN, JJ.
VICTORY, Judge.
Defendant, John H. Major, was convicted by a jury of two counts of possession of a *139 firearm by a convicted felon, in violation of LSA-R.S. 14:95.1. He was sentenced to serve six and one-half years at hard labor on each of the two counts, the sentences to run concurrently. On appeal, defendant argues (1) that the trial court erroneously denied a defense motion for new trial contending that the evidence was insufficient to support the convictions, and (2) that the sentence imposed is unconstitutionally excessive. For the following reasons, the convictions and sentence are affirmed.

FACTS
On May 21, 1990, a Shreveport policeman located a stolen car, which had been purchased for scrap from the defendant, at Pipes Auto Shredder. In the process of investigating defendant's criminal record, the officer also checked the pawn system, discovering an April 12, 1990 transaction in which the defendant pawned a Rossi .38 caliber Interarms revolver (Rossi) and a November 22, 1989 transaction in which defendant pawned a Marlin .22 caliber rifle (Marlin). The Rossi was pawned at Max's Pawn Shop in Shreveport and the Marlin at Brittain's in Shreveport. The Marlin was apparently redeemed from Brittain's and again pawned by the defendant to Max's on February 19, 1990. The arresting officer secured the original pawn tickets for each transaction and a photocopy of the defendant's driver's license. Comparing the pawn tickets and license, the officer concluded that the signatures matched.
The defendant was arrested on June 7, 1990 and charged with illegal possession of stolen things and with two counts of possession firearms as a convicted felon, based on a February 1987 conviction of simple burglary. Count I represented the February 19, 1990 pawn of the Rossi revolver and Count II represented the April 12, 1990 pawn of the Marlin rifle. At the time of the arrest, defendant admitted he pawned the weapons, but that he did so as favors to friends and that he did not personally handle the weapons.
On April 3, 1991, defendant was convicted by a jury on both counts of possession of a firearm by a convicted felon, and later sentenced to six and one-half years at hard labor on each conviction, the sentences to run concurrently.

SUFFICIENCY OF THE EVIDENCE
The defendant argues the trial judge erroneously denied his motion for new trial filed on grounds that the verdict was contrary to the law and the evidence. LSA-C.Cr.P. Art. 851(1). Defendant complains that the state failed to produce sufficient evidence to establish defendant's possession of the firearms as required by LSA-R.S. 14:95.1. This article provides that it is unlawful for one convicted of enumerated felony crimes, including simple burglary, to possess a firearm for ten years after completion of the sentence.
In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The appellate court must determine whether the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proven beyond a reasonable doubt. State v. Nealy, 450 So.2d 634 (La. 1984); State v. Doby, 540 So.2d 1008 (La. App. 2d Cir. 1989), writ denied, 544 So.2d 398 (La.1989).
An appellate court reviewing the sufficiency of the evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Jacobs, 504 So.2d 817 (La.1987); State v. Lott, 535 So.2d 963 (La. App. 2d Cir.1988). The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. State v. Mussall, 523 So.2d 1305 (La.1988).
*140 In this case, the element of possession was proven by circumstantial evidence. Circumstantial evidence is defined as evidence of facts or circumstances from which one might infer or conclude the existence of other connected facts. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Austin, 399 So.2d 158 (La.1981).
In all cases where an essential element of the crime, such as possession in this case, is not proven by direct evidence, LSA-R.S. 15:438 applies. As an evidentiary rule, it restrains the fact-finder, as well as the reviewer on appeal, to accept as proven all that the evidence tends to prove, and then to convict only if every reasonable hypothesis of innocence is excluded. Whether circumstantial evidence excludes every reasonable hypothesis of innocence presents a question of law. State v. Shapiro, 431 So.2d 372 (La.1982); State v. Hammontree, 363 So.2d 1364 (La.1978).
The circumstantial evidence rule of LSA-R.S. 15:438 does not establish a stricter standard of review than the more general Jackson v. Virginia formula, but a hypothesis of innocence that is sufficiently reasonable and sufficiently strong must necessarily lead a rational fact finder to entertain a reasonable doubt about guilt. State v. Sutton, 436 So.2d 471 (La.1983); State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988). If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails; and unless another one creates reasonable doubt, the defendant is guilty. State v. Young, 596 So.2d 403 (La.App. 4th Cir.1992); State v. Captville, 448 So.2d 676 (La.1984).
Officer Prokoff of the Shreveport Police Department testified that local pawn shops are required to turn in transaction records every 24 hours. He testified that he secured an inventory list of items pawned by the defendant, which included a Rossi .38 caliber revolver.
Officer Henderson of the Shreveport Police Department testified that he checked the pawn records and discovered that defendant pawned a Marlin .22 caliber rifle to Brittain's in Shreveport on November 22, 1989, and later redeemed the rifle from Brittain's and again pawned it to Max's on February 19, 1990. Henderson also confirmed that defendant pawned a Rossi .38 caliber revolver at Max's in Shreveport on April 11, 1990, and Henderson had an officer in the pawn division check Max's for the Rossi, but it was ultimately discovered in the police property room; it was recovered as a stolen weapon. A photocopy of defendant's driver's license was secured and compared to his original license in court. Henderson also produced the original pawn tickets which the defendant signed at the time of each transaction. The signatures on the driver's license and the pawn tickets were compared in court and Henderson concluded that the signatures matched.
Officer Henderson testified that he arrested defendant and advised him of his rights on June 7, 1990. Although defendant admitted pawning the Rossi and Marlin, he told the officer he did so as a favor to friends and never handled the weapons. The officer asked defendant how he was able to redeem and again pawn the Marlin without touching it, but the defendant did not explain. At the time of his arrest, defendant did not provide the names of the friends who he claimed physically possessed the weapons at the pawn shops.
On cross-examination, Officer Henderson stated it was not uncommon for someone to pawn items for another person. In explaining why a person would pawn another's item, he stated that some people do not have a drivers license or they know the gun is stolen and do not want the gun pawned in their name.
Testifying for the defense, Lawrence Johnson stated that he has known the defendant for approximately two years, having met him at a body shop where he "hangs out." He testified that on April 11, 1990, while at the body shop, he heard Mr. Brown (another man who frequented the body shop) discuss pawning a revolver for money to buy a car part. Although Mr.
*141 Johnson testified that he learned the following day that the defendant had been arrested for pawning a gun, the state showed that defendant was not arrested until June 7, 1990. Mr. Johnson did not contact police to provide this information, but did try to bond the defendant out of jail.
The defendant testified at trial that John Savoy, his next door neighbor who is now deceased, asked him to sign a pawn ticket on his behalf on the Marlin rifle. He stated that on November 22, 1989 he and Mr. Savoy went to the pawn shop and that Mr. Savoy carried the weapon. He testified that Mr. Savoy redeemed the Marlin from Brittain's and then asked the defendant to again pawn it for him. On February 19, 1990, the Marlin was pawned a second time to Max's, with Mr. Savoy carrying the weapon and the defendant signing the ticket. The defendant did not offer an explanation as to why Mr. Savoy did not pawn his own gun, nor why defendant did not know his neighbor's name at the time he was questioned by the police.
With regard to the April 11, 1990 pawn of the Rossi, defendant testified that Mr. Brown asked him to pawn the gun as a favor so he could secure funds for a car part. Although Mr. Brown needed his car repaired in order to drive to work, he apparently did not have a valid driver's license that would allow him to pawn his own gun, according to defendant's testimony. Defendant claimed he did not know that the Rossi was stolen, and further testified that he never touched the weapons in question because he knew to do so as a convicted felon was illegal. When asked at the police station who owned the Rossi, defendant did not provide Mr. Brown's name. Although defendant testified to pawning the gun for Mr. Brown at trial, Mr. Brown was not called as a witness to corroborate defendant's testimony.
On cross examination, defendant admitted pawning several other items at Max's between June of 1989 and April of 1990, including a wedding band, lawnmower, refrigerator, radar detector, cordless drill, and a bike, all of which he admittedly physically possessed. In addition, the jury was able to evaluate defendant's credibility in light of his prior criminal record, which included six felony convictions.
The essential elements of this offense are (1) status as a convicted felon, (2) physical and or constructive possession of a firearm, and (3) general intent to commit the offense. State v. Husband, 437 So.2d 269 (La.1983).
As evidence of defendant's status as a convicted felon, the state introduced the transcript from the defendant's February 1987 guilty plea to simple burglary. The state also had a fingerprint expert take the defendant's prints in court and compare the prints to those on the bill which charged the defendant with simple burglary. Further, defendant conceded his 1987 felony conviction.
With regard to the element of constructive or actual possession, evidence adduced at trial indicates only that defendant signed tickets to pawn firearms on three separate occasions. The pawn tickets constitute circumstantial evidence of the fact that defendant possessed the weapons. The pawn inventory print-out and the original pawn transaction tickets only indicate that defendant entered both Max's and Brittain's pawn shops to pawn firearms. Although defendant conceded in his statement to police and on the stand that he signed all three pawn tickets and was physically present at the pawn shop, he maintained he was simply lending his identification in order to pawn his acquaintances' guns.
Even though the pawn ticket does not necessarily prove that the person who signed the ticket physically possessed the item [without additional evidence produced from a pawn broker or eye witness], defendant's signature on the pawn ticket does suggest two possibilities: 1) either defendant brought the gun into the pawn shop and pawned the gun for money, or 2) defendant accompanied a friend to the pawn shop, but did not handle the weapon. In the first instance, defendant would have actual physical possession, thus be guilty *142 as charged. However, in the second instance he could arguably be innocent.[1]
As previously indicated, the defendant took the witness stand in his own defense and testified he did not handle the guns. The jury's verdict indicated that they did not accept his testimony as truthful. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir.1984). In the instant case, the unanimous verdict on Count 1 and the 11-1 verdict on Count 2 indicates that the jurors accepted the testimony of the state's witnesses, and rejected the testimony of the defense witnesses.
Because circumstantial evidence was used to prove defendant possessed the weapons, LSA-R.S. 15:438 requires that the evidence exclude every reasonable hypothesis of innocence. The question becomes whether a rational jury, when presented both possibilities listed above, was reasonable in rejecting defendant's story. If the jury was reasonable in rejecting the defendant's hypothesis of innocence, that he entered the pawn shop with two other men to pawn their guns, that hypothesis fails.
The defendant testified that the owner of the Marlin, Mr. Savoy, was killed before the trial, but would otherwise have testified on his behalf. Mr. Brown, alleged owner of the Rossi, did not testify. Therefore, no witness was called by the defense to corroborate the defendant's testimony with regard to his refusal to carry or handle the guns pawned. Defendant's explanation for pawning the Rossi was that Mr. Brown needed his car repaired so he could drive to work, yet Mr. Brown did not have a driver's license. Defendant did not give his neighbor's name until trial, after Mr. Savoy had been killed. Considering defendant's past criminal record and discrepancies in his story, it was reasonable for the jury to reject defendant's credibility, thus reject the only reasonable hypothesis of innocence for these crimes.
In State v. Guirlando, 491 So.2d 38 (La. App. 1st Cir.1986), the court found sufficient evidence to convict using the following rationale:
The defendant testified and denied knowledge of ... the marijuana. The jury viewed the defendant's appearance and demeanor when he testified. Their verdict indicates they found the defendant's testimony was not credible and, therefore, they gave it no weight and rejected it. This is a finding of fact over which this court has no jurisdiction.... The jurors could have reasonably inferred that the failure of the defendant to tell the truth supported the inference that the truth was unfavorable to him and also showed an awareness of wrongdoing. Further, as indicated by [State v.] Captville, [448 So.2d 676 (La.1984)] when the jury rejects the defendant's hypothesis of innocence presented by his testimony, the defendant is guilty unless there is another reasonable hypothesis which raises a reasonable doubt.... Once it is factually established that the defendant was untruthful when he denied knowledge of the presence of the marijuana, the only remaining reasonable hypothesis is that he had knowledge of its presence. He either knew or he did not; there is no other hypothesis. The foregoing circumstances and the inferences reasonably drawn therefrom provide sufficient evidence to establish the elements of the offense beyond a reasonable doubt.
In State v. Captville, supra, at note 4, appears the following:
4. Such a finding of purposeful misrepresentation reasonably raises the inference of a "guilty mind", just as in the case of "flight" following an offense or the case of a material misrepresentation *143 of facts by a defendant following an offense. See State v. Davenport, 445 So.2d 1190 (La.1984). "Lying" has been recognized as indicative of an awareness of wrongdoing. See State v. Rault, 445 So.2d 1203 (La.1984), in which this court in rejecting as unreasonable an asserted "hypothesis of innocence" (based on defendant's own statement), stated:
"The jury could have reasonably concluded that Rault concocted this version of the crime to hide his own guilt." 445 So.2d at 1213.
Any contrary implications in State v. Savoy, 418 So.2d 547 (La.1982), and State v. Shapiro, 431 So.2d 372 (La.1983), simply mean that such evidence, although admissible to support a "guilty mind", are not alone sufficient to convict.
As recognized in State v. Wright, 445 So.2d 1198 (La.1984), State v. Graham, 422 So.2d 123 (La.1982), and State v. Sutton, 436 So.2d 471 (La.1983), the court does not determine whether another possible hypothesis has been suggested by defendant which could explain the events in an exculpatory fashion. Rather, the reviewing court evaluates the evidence in the light most favorable to the prosecution and determines whether the alternative hypothesis is sufficiently reasonable that a rational juror could not "have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, supra. In rejecting defendant's testimony, the jurors necessarily viewed the only hypothesis of innocence as unreasonable. When the evidence excludes all reasonable hypotheses of innocence, the evidence is sufficient to prove guilt beyond a reasonable doubt.
Considering the facts presented to the jury in this case and the inconsistencies in defendant's testimony, the jury could have reasonably concluded the defendant's testimony was fabricated. Once the jury rejected defendant's hypothesis of innocence, the only other hypothesis, that the defendant entered the pawn shop with the gun to pawn for himself, would necessarily lead to a conviction. Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of LSA-R.S. 14:95.1 beyond a reasonable doubt. For these reasons, this assignment is without merit.

EXCESSIVE SENTENCE
Defendant also challenges the six and one-half year concurrent sentences imposed as excessive, specifically arguing that constructive, as opposed to actual, possession is a mitigating factor. Because a conviction for possession of a firearm by a convicted felon carries a maximum sentence of ten years at hard labor, defendant's sentence is well within statutory limits.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates LSA-Const. Art. 1, § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Richardson, 545 So.2d 714 (La.App. 2d Cir.1989). A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, we do not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983).
In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions and may properly review all prior criminal activity. State v. Palmer, 448 So.2d 765 (La.App. 2d Cir.1984), writ denied, 452 So.2d 695 (La. 1984).
The trial court complied thoroughly with the sentencing guidelines provided by LSA-C.Cr.P. Art. 894.1. The trial judge ordered and reviewed a presentence investigation (PSI) report in connection with the sentencing, which included information regarding *144 the defendant's education, family background, and employment record.
The trial judge considered in detail defendant's substantial criminal history. The PSI indicates that the defendant was fined in 1958 for carrying a loaded gun in his car. In 1960, and again in 1961, the defendant was convicted of grand larceny/house breaking in South Carolina. In 1963, he was convicted of armed robbery, assault and battery with intent to kill, and larceny also in South Carolina. In 1970, he was convicted in South Carolina of possession of an illegal weapon. In 1976, the defendant was convicted of attempted theft, and in 1977 of aggravated assault in Lake Charles, Louisiana. In 1978, he was convicted of forgery in Lake Charles, and in 1979 of federal charges of theft of mail in Shreveport. He was convicted of simple burglary in 1986 in Shreveport, the felony conviction which makes him subject to the present offense.
The trial judge concluded that defendant's incarceration would not cause hardship to his family, since his children are now adults. The PSI also indicates that the defendant's probation has been revoked three times due to new felony convictions, indicating defendant's propensity to engage in criminal activity. The judge stated that the defendant is a habitual offender and has been in trouble with the law since 1958. He concluded that defendant would be likely to commit another offense if the sentences were suspended or probated, that defendant is in need of a custodial environment and supervision, and that lesser sentences would deprecate the seriousness of the offenses. The trial judge considered defendant's conduct very serious and found no provocation for it.
The defendant's extensive criminal history is a legitimate sentencing consideration which the trial judge stated weighed heavily against defendant. The sentences imposed were ordered to be served concurrently, a substantial benefit to the defendant. They are not too severe, nor a purposeless and needless imposition of pain and suffering.

DECREE
For the foregoing reasons, the convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] We decline to address whether Major's action in accompanying a friend in physical possession of a firearm, and signing a pawn ticket for the firearm would constitute sufficient dominion and control by Major to amount to constructive possession of the firearm by him.