jjLINDSAY, Judge.
At the conclusion of his bench trial, the defendant, Kenneth W. Gray, was found guilty as charged of simple burglary. He appeals, claiming there was insufficient evidence upon which to base the conviction. For the following reasons, we reverse.

FACTS

The defendant was charged with the simple burglary of a camp house belonging to James Rogers. The burglary is alleged to have occurred on September 21, 1992. On September 27, 1992, Mr. Rogers arrived at the camp house to prepare it for hunting season. He found a skeleton key in the front door which did not fit the lock. The back door of the house was standing open and a massive wood burning heater, which Mr. Rogers had personally made, was missing. Ashes were strewn about the interior of the house and dresser drawers and containers had been opened and scattered about. Other items missing from the house included a chest of drawers, a trunk, a churn, a table, and a brass and glass coffee table. Law *423 enforcement officials were summoned, but due to the dusty conditions in the house, no fingerprints were recovered.
Based upon information provided to law enforcement officials by a local resident, Mr. Jimmy F. Cheatwood, the defendant was arrested and charged with simple burglary of the camp house. Although the defendant’s house was subsequently searched, none of the items missing from the camp house were recovered, either from the defendant’s house or from any other source.
The defendant waived his right to a jury trial. A bench trial was held on May 21, 1993.
laAt the trial, Mr. James Rogers testified that he discovered this most recent burglary of the house' on September 27, 1992. He stated that he gave law enforcement officials a list of items missing from the camp house. The main item that had been taken was a wood burning stove. Mr. Rogers testified that he made the stove himself. The stove was made of steel pipe. It was 26 inches in diameter and was approximately three feet long. Mr. Rogers stated that he weighed the stove after it was built and it weighed 463 pounds. Mr. Rogers’ son, Lofton Shane Rogers, testified that it took four people to place the stove in the house.
The camp house had been previously burglarized in August, 1992. Among the items taken at that time was a white mattress with pink flowers. Rickey Watts testified that he was working near the Rogers camp house in August and saw someone he thought was the defendant near the house. Mr. Watts testified he saw a white mattress with pink flowers on the defendant’s truck as it left the area. The record does not show that the defendant was charged with or convicted of the August burglary.
Mr. Cheatwood testified that on September 21, 1992, at about 6:30 p.m., he saw the defendant pulling out of the driveway of Mr. Rogers’ camp. The driveway was frequently used by local residents as a “turn around” spot. Mr. Cheatwood stated that the defendant was driving a brown pickup truck that at one time belonged to Mr. Cheatwood. Mr. Cheatwood stated that the defendant had something in the bed of the truck which looked like a barbecue grill. Mr. Cheatwood is blind in his left eye, but has 20/20 vision in his right eye.
IsMr. Cheatwood’s spouse, Susan, testified that on the evening of September 21, 1992, she saw the brown pickup truck pass as her husband pulled into their residence. She stated she thought the truck was in front of her husband but was not sure. Mr. Cheat-wood had testified that the defendant pulled onto the roadway behind him. Mrs. Cheat-wood stated there were some items in the back of the truck, but she could not specify what those items were. She also stated that she could not identify the driver of the truck.
The defendant testified in his own defense. He testified that on September 21, 1992, his brown truck was inoperable. He testified that about September 18, 1992, a front wheel bearing went out on the truck. He stated that on September 21, 1992, he borrowed money from his sister, Dora Lee Gray, to obtain a part to fix the vehicle. He claimed that he installed the part improperly and the vehicle broke down again. He testified that he did not successfully repair the wheel bearing until September 29,1992, but he then had flat tires on the truck which he did not repair until October 4 or 5, 1992.
He testified that he was on probation for theft of property valued at more than $500. His probation officer, Dave Lloyd, testified that he saw the defendant on September 24, 1992 and that he was trying to get a ride to Arcadia, Louisiana to get a part for his truck. Mr. Lloyd also testified that on September 22, 1992, the truck was in the defendant’s driveway when he went by for a routine check. Mr. Lloyd contacted the defendant to inquire into his attempts to find employment. The defendant told Mr. Lloyd that his truck was not operational. Mr. Lloyd also testified that in mid-September, |41992, while making rounds in the area, he saw a brown pickup truck he thought belonged to the defendant but upon closer inspection found that it was not the defendant.
Dora Lee Gray, the defendant’s sister, corroborated his testimony that on September 21, 1992, she lent him money to buy a part for his truck. Vernadine Davis, the defen *424 dant’s live-in companion, testified that the defendant’s truck broke down around September 18, 1992 and was not back in service until October 3, 1992. Ms. Davis also testified that on September 21, 1992, the defendant borrowed money from his sister to buy a part for the truck.
Mickey Turner, owner and operator of Arcadia Auto Parts, testified that he searched his sales receipts and could find no record of a sale of wheel bearings from September 14 through 23, 1992. However, Mr. Turner testified that the defendant came into the store and bought wheel bearings, but he could not remember the day the purchase took place. Mr. Turner testified that the cash receipts he kept were also entered into a computer, but he did not bring the computer records to court.
At the conclusion of the trial, the judge found the defendant guilty as charged. The court stated that he found that every reasonable hypothesis of innocence had been excluded and the defendant was guilty of simple burglary beyond a reasonable doubt. The court also stated that, although it believed the defendant’s truck was incapacitated and that he borrowed money from his sister to purchase a new wheel bearing, the purchase took place on September 28, 1992 and not September 21, 1992.
IsOn September 7,1993, the defendant was sentenced to serve eight years at hard labor. The defendant filed motions for post judgment verdict of acquittal, new trial and to reconsider the sentence. These motions were denied by the trial court. The defendant now appeals his conviction, arguing that the evidence was insufficient to support a verdict of guilty of simple burglary or any other responsive verdict to that charge and that the trial court erred in denying the motions for post judgment verdict of acquittal and for new trial.

SUFFICIENCY OF EVIDENCE

The standards of review are the same for denial of a motion for post judgment verdict of acquittal and for sufficiency of the evidence to sustain a verdict. LSA-C.Cr.P.Art. 821; State v. Sumler, 395 So.2d 766 (La.1981).
The criteria for evaluating sufficiency of evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the elements of the crime proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Nealy, 450 So.2d 634 (La.1984); State y. Daniels, 607 So.2d 620 (La.App.2d Cir.1992); State v. Bryant, 607 So.2d 11 (La.App.2d Cir.1992). That standard, now legislatively embodied within LSA-C.Cr.P.Art. 821, is applicable to cases involving both direct and circumstantial evidence.
The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. LSA-R.S. 15:438.
| ^Generally, direct evidence consists of testimony from a witness who actually saw or heard an occurrence, proof of the existence of which is at issue. State v. Turner, 591 So.2d 391 (La.App.2d Cir.1991), writ denied, 597 So.2d 1027 (La.1992).
Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude the existence of other connected facts. Circumstantial evidence consists of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Major, 604 So.2d 137 (La.App.2d Cir.1992), writ denied, 609 So.2d 255 (La.1992); State v. Daniels, supra.
The circumstantial evidence rule of LSA-R.S. 15:438 does not establish a stricter standard of review than the more general Jackson v. Virginia formula, but a hypothesis of innocence that is sufficiently reasonable and sufficiently strong must necessarily lead a rational fact finder to entertain a reasonable doubt about guilt. State v. Daniels, supra; State v. Major, supra.
Whether circumstantial evidence excludes every reasonable hypothesis of inno *425 cence presents a question of law. State v. Daniels, supra.
Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Wiggins, 518 So.2d 543 (La.App. 5th Cir.1987), writs denied, 530 So.2d 562 (La.1988), 569 So.2d 979 (La.1990).

DISCUSSION

The defendant was charged with simple burglary. LSA-R.S. 14:62 sets forth the elements of that offense as follows:
^Simple burglary is the unauthorized entering of any dwelling, vehicle, water craft, or other structure, movable or immovable, with the intent to commit a felony or any theft therein....
We recognize that the trial court did not find credible the defendant’s testimony that his vehicle was not operational at the time of this offense. We also recognize that it is within the province of the fact finder to assess the credibility of witnesses. State v. Bryant, 607 So.2d 11 (La.App.2d Cir.1992). However, even if we discount the defendant’s testimony regarding the dates upon which his truck was out of service and if we accept as true all testimony given by the witnesses for the prosecution, the evidence in this record is not sufficient to support the defendant’s conviction of simple burglary.
The only evidence in this case which remotely connects the defendant to this offense is that of Mr. Jimmy Cheatwood. Mr. Cheatwood testified that he saw the defendant coming out of the Rogers’ driveway with something in the back of his truck which he thought was a barbecue grill. Mr. Cheat-wood later surmised that the object could have been the wood burning stove missing from the camp. Mr. Cheatwood could not say that the object was the missing stove.
A sketch of the object drawn by Mr. Cheatwood at trial does not aid the state’s case. Mr. Cheatwood sketched a rounded object protruding slightly above the tailgate of the truck. This object could have been any number of things. Further, Mr. Cheat-wood did not mention observing any other items that were taken in the burglary, such as the chest of drawers, table, trunk, churn, or brass and glass coffee table.
IgA search was made of the defendant’s home and none of these items were found to be in the defendant’s possession.
At best, Mr. Cheatwood’s testimony establishes that the defendant was observed in the vicinity of the Rogers’ camp house with a rounded object in the back of his truck. This is insufficient evidence to establish all elements of simple burglary beyond a reasonable doubt.
The first element of the crime of simple burglary is unauthorized entry. There is no evidence in this record, direct or circumstantial, to show that the defendant ever entered the Rogers’ camp house. Without a showing of an unauthorized entry, the conviction of simple burglary cannot stand.
Further, as stated above, the stove taken from the house weighed in excess of 400 pounds and required four persons to bring it into the house. When Mr. Cheatwood observed the defendant, he was alone. There is no explanation in the record as to how the defendant could have committed this burglary and taken this stove, acting alone. Under the circumstances, the item seen in the back of the defendant’s truck could have easily been a barbecue grill, rather than the much heavier stove.
Further, the “other crimes” evidence presented by the prosecution to show that the defendant may have been involved in a prior burglary of the camp house has no probative value to prove that the defendant committed the burglary in the present case. At most, the prosecution showed that, prior to the present burglary, the defendant was observed in the vicinity of the camp house with items in his pickup truck, including a mattress similar to one taken from the camp house in August. This evidence does not establish |9that in September, 1992, the defendant made an unauthorized entry of the camp house and took the wood burning stove.
Finally, there is no showing that the defendant was in possession of any of the items taken from the camp house in the September *426 burglary. Mr. Cheatwood’s testimony might establish reasonable suspicion or probable cause to believe the defendant was involved in this offense, but his testimony is not sufficient to exclude every reasonable hypothesis of innocence and establish the defendant’s guilt beyond a reasonable doubt.

CONCLUSION

Reviewing the evidence in this record under the standards set forth in Jackson v. Virginia, supra, we find that the evidence is insufficient to establish the defendant’s guilt of simple burglary beyond a reasonable doubt. Therefore, his conviction and sentence are reversed. The defendant is ordered discharged.
REVERSED.