h CARAWAY, J.
Defendants, Stanley Charleston and' Derrick Jenkins, were charged with thé armed robbery of a loan company in Monroe, Louisiana. A jury convicted both defendants as charged. Both defendants have appealed, urging that the state’s case of circumstantial evidence against them failed to exclude every reasonable hypothesis of innocence. Finding the evidence constitutionally insufficient to support a verdict of guilt beyond a reasonable doubt, we reverse the defendants’ convictions and sentences and enter judgments of acquittal.

Facts

On the morning of September 8, 1997, an armed robbery occurred at Capital Loan Company on Third Street in Monroe. Pacquin Edwards was working alone at the time when the gunman approached her with a large silver and black gun. The robber, who the state claims was defendant, Derrick Jenkins, took two rolls of quarters from a money drawer. He then exited the front door of the small office building and turned south down Third Street immediately passing out of view of Edwards. Because the robber’s face was covered with a bandana, Edwards was never able to identify Jenkins as the robber.
Two other witnesses did identify both defendants in the area near Capital Loan. Cassandra Foster identified Jenkins as he passed her near the corner .of Third and Olive Streets. She was sitting on the steps in front of Miss Ques Lounge which is adjacent to Capital Loan on its south side. While Foster was able to positively identify Jenkins and his co-defendant, Stanley Charleston, who remained in a car directly across Olive Street from where she was seated, she could not see Jenkins enter or. exit Capital Loan. As Jenkins passed Ms. Foster twice, going to and from Third Street in the direction of Capital Loan, she identified no gun, bandana or the rolls of quarters.
|gThe second witness, Cathy Lopez, reported that she and a woman named Candy had seen the defendants driving in the area around Capital Loan. The defendants had parked their car in the parking lot of Lopez’s boarding house on Olive Street across from Miss Ques where Candy, who was acquainted with defendants, visited with them.
Neither the gun, the bandana, nor the money was recovered from the defendants following the traffic chase and stop of their vehicle soon after the robbery. No fingerprints or other direct evidence linked Jenkins to the scene of the robbery at Capital Loan.
Following a jury verdict convicting them of armed robbery by a vote of 11 to 1, the defendants challenge the sufficiency of the circumstantial evidence presented by the state.

Discussion

In a circumstantial evidence case where the defendant was observed near the scene of a crime, this court in State v. Gray, 26,115 (La.App.2d Cir.6/22/94), 639 So.2d 421, 424-425, recited the applicable law as follows:
“The criteria for evaluating sufficiency of evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the elements of the crime proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Nealy, 450 So.2d 634 (La.1984); State v. Daniels, 607 So.2d 620 (La.App. 2d Cir.1992); State v. Bryant, 607 So.2d 11 (La.App. 2d Cir. *324 1992). That standard, now legislatively embodied within LSA-C.Cr.P.Art. 821, is applicable to cases involving both direct and circumstantial evidence.
The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. LSA-R.S. 15:438.
Generally, direct evidence consists of testimony from a witness who actually saw or heard an occurrence, proof of the existence of which is at issue. State v. Turner, 591 So.2d 391 (La.App. 2d Cir.1991), writ denied, 597 So.2d 1027 (La.1992).
^Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude the existence of other connected facts. Circumstantial evidence consists of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.State v. Major, 604 So.2d 137 (La.App. 2d Cir.1992), writ denied, 609 So.2d 255 (La.1992); State v. Daniels, supra. The circumstantial evidence rule of LSA-R.S. 15:438 does not establish a stricter standard of review than the more general Jackson v. Virginia formula, but a hypothesis of innocence that is sufficiently reasonable and sufficiently strong must necessarily lead a rational fact finder to entertain a reasonable doubt about guilt. State v. Daniels, supra; State v. Major, supra.
Whether circumstantial evidence excludes every reasonable hypothesis of innocence presents a question of law. State v. Daniels, supra.
Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Wiggins, 518 So.2d 543 (La.App. 5th Cir.1987), writs denied, 530 So.2d 562 (La.1988), 569 So.2d 979 (La.1990).”
The defendant in Gray, supra, was charged with the burglary of a camp house where a wood burning stove had been taken. Six days before the burglary was discovered, the defendant had been seen driving out of the driveway of the camp house through a “turn around” spot frequently used by local residents. An item resembling a barbecue grill was seen in the back of defendant’s pickup truck. The defendant’s presence only in the area near the crime scene and the lack of an actual identification of the stove which would clearly link the defendant to the burglary caused this court to conclude that every reasonable hypothesis of innocence was not excluded.
As will be seen in the following detailed analysis of the state’s evidence, this case is built solely on circumstantial evidence. We must therefore examine the evidence to determine whether every reasonable hypothesis of innocence was excluded.

poster’s Identification of Defendants

On the morning of the robbery, Ms. Foster was sitting outside Miss Ques waiting for her employer to open the business so that she could begin work. Her location was on the front steps of Miss Ques, on the Olive Street side of the business.
Foster described seeing the defendants driving on Olive Street in front of her circling the block.[1] As the defendants’ car drove by, Lopez and Candy were crossing Olive Street from the parking lot of the boarding house and Foster heard a brief conversation between the men and women. While the defendants continued driving and circling, Lopez and Candy walked on northward toward Louisville Avenue. When Foster next saw the defendants circling the block, she spoke to the driver in the car, who she later identified as Charleston, and asked if the men were *325 looking for the women. The driver responded no.
When the car came around the block again, Foster saw the car stop and park in the parking lot of the boarding house. She next reported that Jenkins exited from the passenger side of the vehicle and walked across Olive in front of her toward Third Street in the direction of Capital Loan. She described Jenkins as having braided hair and wearing a black T-shirt and black pants. About ten to fifteen minutes later, Jenkins came back by her walking at a fast pace almost “jogging a little bit.” Jenkins headed back to the vehicle and got in. She never saw a cap, bandana, gun or rolls of money as Jenkins passed by.
Foster did not see Jenkins go into Capital Loan nor come out. She stated that as he first walked by, he went “back behind me” in the direction of Capital Loan. This was consistent with her overall testimony which indicated she was | fitting on the front steps of Miss Ques facing south toward Olive Street looking away from the direction of Capital Loan which would be around the corner of Miss Ques building. Although at one point in her testimonyshe indicated that one could look around the corner of the lounge building and see Capital Loan, her testimony was that she was not looking in that direction during the ten. to fifteen minute interval after Jenkins walked by. Indeed, if she was situated looking toward the small office building, upon the robber’s entry and exit, she would have seen an armed, masked man.
After Jenkins hurried past her, he returned to the car and the car left the parking lot. Foster was still on the steps of Miss Ques when “shortly after the defendants’ car left,” she saw the police arrive at Capital Loan.

Edwards’ Description of tine Robber

Edwards stated that the robber entered the loan office with a large gun in his hand. In her only description of the robber, she described him as wearing a “dark T-shirt, dark jeans, dark hat and a bandana around his face.” She was not asked regarding his height, size or hair. She stated that a black T-shirt (State Exhibit S-4) was as dark as the shirt worn by the robber but she could not identify the shirt as the T-shirt worn by the robber. The T-shirt, S-4, was found in the defendants’ vehicle later that morning.
Because the robber wore his baseball type cap low on his head with the bandana covering his face, Edwards could see only his eyes. She therefore did not identify Jenkins as the robber.

Lopez’s Testimony

Lopez was also able to identify both defendants which she saw on her walk to the Cracker Barrel on Louisville Avenue that morning. As she and Candy walked the few blocks to Louisville, she saw the defendants pass by them several |fitimes. Candy knew the defendants. When Lopez and Candy arrived back to the boarding house, one of the defendants “hollered” at Candy as the vehicle stopped in the parking lot. Lopez stated that Candy went to their car as Lopez went on inside the boarding house. Candy did not testify at trial.

The Defendants’Arrest

Officer Mark Kemp was on patrol one block from Capital Loan when the robbery was reported. He immediately went to Capital Loan and got a description of the suspect from Edwards. He then left Capital Loan in the same direction the robber had fled and met and interviewed Foster, who gave him a detailed description of Jenkins and the defendants’ automobile.
Sergeant Billy Powell of the Monroe Police Department heard the description of the vehicle over the radio while he was traveling west in his unmarked police car around the 2100. block of Washington Street at or near Eighteenth Street. A moment later, he saw a vehicle matching the description he just heard on the radio traveling east on Washington Street. According to Sgt. Powell, the driver of the *326 car saw Powell looking at him and shook his head at the officer. As Sgt. Powell turned his car around to follow the suspect vehicle, it sped off and a chase ensued.
Other police units joined in the pursuit and eventually the car containing the defendants stopped. Defendants, who then tried to escape on foot, took off separately. Sgt. Powell was with a group of officers that pursued and caught Jenkins, the passenger of the car. One officer described Jenkins’ hair as being long and braided in the back. The driver, however, escaped. A registration check of the vehicle showed that the car was registered to Charleston. Sgt. Powell identified Charleston as the driver of the vehicle. Lopez and Foster identified Charleston from a photo lineup and three days later he was arrested.
|7Fingerprints lifted from the cash tray handled by the armed robber were not usable for identification purposes. Fingerprints taken from the front door of Capital Loan did not match either defendant. Fingerprints taken from the seized vehicle did not match either suspect. Neither the gun, the money nor the bandana worn by the robber were recovered. Although a black shirt found in the vehicle was admitted into evidence, it was not tested for hair follicles that would indicate that it was the shirt worn by Jenkins. No testimony was given concerning the shirt which Jenkins was wearing at the time of his arrest.

Sufficiency of the Evidence

In our review of the evidence, we make no credibility determinations and accept as true all testimony of the prosecution’s witnesses. The evidence is viewed in the light most favorable to the prosecution. Nevertheless, the state had to depend wholly on circumstantial evidence in this ease to show that Jenkins entered Capital Loan and committed the robbery. Therefore, the circumstantial evidence must exclude every reasonable hypothesis of innocence. As in Gray, supra, where the defendant’s identification near the scene of the crime established reasonable suspicion or probable cause to believe the defendant was involved in the crime, the evidence is insufficient to exclude other reasonable hypotheses of the defendants’ innocence.
A significant problem in the state’s case concerns the location of the two buildings. Between Capital Loan and Miss Ques Lounge is an alley. The photos and the testimony showed that as the robber exited Capital Loan, he was immediately out of view of Edwards and crossing the alleyway on the south side of the Capital Loan building. He could continue on southward down Third Street and to the corner of Miss Ques where Foster could see him, or he could instead turn down the alley behind Miss Ques and never be seen by Foster. This alternate | Sescape route must be considered along with the fact that the crime occurred in a commercial business area of the city. No testimony was given by Foster concerning the number of other people she may have seen on the street that morning. Thus, an equally competing and reasonable inference that can be drawn from the evidence is that a person other than Jenkins could have been in the area to commit the crime and have used the alley for escape.
A second significant weakness in the evidence concerns the lack of any specific detail of the robber’s description given by Edwards. Her description of the robber matched with Foster’s description of Jenkins for only three commonplace characteristics. He was a black male, wearing a dark shirt and dark pants. No comparison of Jenkins’ height, build and hair can be made with Edwards’ description because Foster did not testify, even in general terms, regarding the height, build and hair of the robber. With no distinguishing characteristic for identification given by Edwards, there is no compelling inference that she and Foster observed the same man.
Third, another equally plausible explanation for the defendants’ presence and driving in the area that morning can be in *327 ferred from the state’s evidence of defendants’ conversations with Candy. Despite Charleston’s denial, Foster suspicioned that the men were interested in the women and their whereabouts when she made her inquiry to him as a stranger as he drove past. Although Lopez did not know the defendants, her description of their passing by her repeatedly as the women walked to Louisville Avenue and back indicates that the men were interested in pursuing their acquaintance with Candy.
Finally, defendants’ flight from the officers is probative evidence of guilt in the context of this case. State v. Bordenave, 95-2328 (La.4/26/96), 678 So.2d 19. Nevertheless, despite the short time interval between the robbery and the traffic 19stop, the defendants’ flight could have stemmed solely from the traffic stop alone, making the inference of guilt for the robbery ambiguous. ' Discussing a defendant’s flight from a subsequent traffic stop unrelated to the charged offense in Bordenave, supra, the supreme court made the following statement:
Considered by itself, evidence of Anderson’s flight on this occasion may have been insolubly ambiguous and of marginal probative value to show his consciousness of guilt for the crimes involving Lewis. State v. Parker, 421 So.2d 834, 841 (La.1983[1982]) (“The jury was properly told to consider flight as evidence of guilt only if they believed the men were fleeing the scene of the automobile accident because they had committed the crime for which they were on trial.”) (citing State v. Lee, 381 So.2d 792 (La.1980)); see 2 McCormick on Evidence, § 263, at 183 (Strong ed. 1992) (“In recent years, a number of courts have begun to look with particular care at the timing of the flight relative to the offense and the strength of the inference that in fleeing the defendant was aware of, and motivated by fear of apprehension for, a particular offense.”)
Id. at 21.
Given the mixed inferences which flight evidence can indicate in these settings, we do not find that the evidence of defendants’ flight in this case added with the prosecution’s other circumstantial evidence is sufficient to exclude every reasonable hypothesis of innocence and establish the defendants’ guilt beyond a reasonable doubt.

Conclusion

Reviewing the evidence in this record under the standards set forth in Jackson v. Virginia, supra, we find that the evidence is insufficient to establish the defendants’ guilt of armed robbery beyond a reasonable doubt. Therefore, the convictions and sentences are reversed. Defendants’ are ordered discharged.
REVERSED.
BROWN, J., dissents with written reasons.

. Although Foster and other witnesses referred to a demonstrative exhibit showing the location of the streets, that exhibit or any map of the area is not in the record. It is unclear precisely which block or blocks, the defendants were circling.