577 So.2d 767 (1991)
STATE of Louisiana, Appellee,
v.
Robert R. HOUSLEY, Appellant.
No. 22353-KA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1991.
Steven R. Thomas, Mansfield, for appellant.
Robert R. Housley, in pro. per.
William J. Guste, Jr., Atty. Gen., Baton Rouge, William R. Jones, Dist. Atty., Coushatta, for appellee.
Before MARVIN, C.J., and LINDSAY and HIGHTOWER, JJ.
MARVIN, Chief Judge.
Robert Housley appeals his conviction by jury of simple burglary and his sentence to maximum confinement of 12 years at hard labor. LRS 14:62. His co-defendant, Cedric Pugh, bargained to plead guilty to the same offense for a cap or ceiling of three years.
Housley contends the state did not prove he was a principal in the crime. He also contends that his sentence, being greater *768 than Pugh's sentence, is excessive and penalizes him for going to trial. In a supplemental brief filed in proper person, Housley further concludes he was denied the right to be present during jury selection and that his counsel was ineffective.
We affirm.

FACTS
After 2:00 a.m. on October 27, 1989, a Coushatta police officer, Scotty Hill, was "making rounds," checking buildings in a commercial area, driving slowly with his headlights off. About 2:30 a.m., Hill saw a car backing out from the side of the Morgan Plumbing Company building toward Ringgold Avenue. Before the car reached the street, it pulled forward and remained parked at the side of the building for a minute or two. The car then backed and turned around in the parking lot in front of the building before continuing south on Ringgold Avenue with its lights off.
After turning on his headlights and overhead lights, Hill stopped the car about 50 yards from the Morgan building and asked the driver, Housley, for his driver's license. Housley had only a temporary receipt for his license, which had been suspended. He was arrested for driving under suspension. The passenger, Pugh, did not have a driver's license. Hill radioed for police assistance and called for a tow truck to move the car.
Officer Bobby Richmond, who was nearby, responded to Hill's call. Hill and Richmond conducted an inventory search of the car, finding a tray of tools on the floorboard of the passenger's front seat, and a torch, an extension cord and some copper tubing in the back seat of the car.
After Hill informed him that he had seen the car beside the Morgan building, Richmond checked the building and three vehicles parked behind the building, two vans and a pickup. He found the back door of one of the vans partially open. The owner of the business, Phillip Mark Morgan, was called to check the vehicles and determine if anything was missing. Morgan saw that a torch was missing from the van with the open door. The officers then showed Morgan the items in Housley's car, all of which he identified as belonging to his company. Morgan said the tool tray came from the back of the pickup and the other items came from the van. He did not authorize Housley or Pugh to enter the vehicles.
Hill photographed the stolen items in Housley's car and returned them to Morgan. He did not attempt to lift fingerprints. Hill informed Housley that he was also being charged with burglary of a vehicle and gave him Miranda warnings. Hill testified:
... I used my flashlight to completely open the van, the back door, to look into it. I asked Mr. Housley if I were to lift fingerprints off the back door, would I find his fingerprints there. He stated "no, you will not find my fingerprints because yours have covered mine up." No fingerprints were taken from the van and no attempt was made to take any fingerprints, because there was a heavy dew and any effort to lift prints on a wet surface would not be successful....
Q. Now, when you questioned Mr. Housley at the scene, did he give you an explanation for why they were at the back of the building?
A. Yes, sir.
Q. What was that explanation?
A. They went back there to take a leak.
Q. And the time that you actually observed them present there at the scene, would that have been in keeping with the explanation they had given?
A. It's possible, yes, sir.

SUFFICIENCY OF EVIDENCE
To convict Housley as a principal to the crime of simple burglary, the jury had to find beyond a reasonable doubt that someone made an unauthorized entry into one or more of the plumbing company's vehicles with the intent to commit a theft, and that Housley was a person concerned in the commission of the crime. LRS 14:24, 62.
In State v. Irvine, 535 So.2d 365 (La. 1988), Irvine and a co-defendant, Tippy, were charged with simple burglary of a *769 storage trailer on a mobile home lot after police saw two black males enter the lot and found Irvine carrying one of several boxes that had been placed outside the trailer by an unidentified person who had entered the locked trailer. While Irvine was being arrested, the person inside the trailer fled. Tippy was found under another trailer on the lot but could not be identified as the person who had fled.
The jury acquitted Tippy and convicted Irvine. The court of appeal found the evidence insufficient to convict Irvine as a principal to the burglary. The supreme court disagreed, affirming the conviction with these remarks:
It is not necessary for the prosecutor to prove the guilt of both principals in order to convict one of burglary. It is only necessary to prove that someone made an unauthorized entry with the requisite intent and that the accused was "a person concerned in the commission of [the] crime." La.R.S. 14:24.
In the present case two black males were seen entering the trailer lot, and shortly thereafter defendant (a black male) was caught "redhanded" near the open door of the previously locked trailer with one of the boxes that had been placed outside by the person who had recently broken into the trailer. Whether the person who entered the trailer was defendant or someone else, evidence that defendant was caught at the scene of the burglary in progress or just completed, with property stolen in the burglary, was sufficient for a rational factfinder to conclude beyond a reasonable doubt that he was "concerned in the commission" of the crime and was guilty as a principal.
535 So.2d at 368.
Housley was similarly caught "redhanded," with the stolen items in his car which was stopped about 50 yards away after Hill saw the car enter the street with its lights off coming from beside or behind the plumbing company building. Housley's explanation to Hill that he and Pugh went behind the building "to take a leak" does not explain the presence of the stolen items in his car. Housley's hypothesis that the items were not the same ones taken from the van but were merely similar items that could have been bought at local stores was obviously not found credible or reasonable by the jury. The jury accepted and believed Morgan's testimony that he recognized the items as his and that he had worked with them within the previous 24 hours, leaving them in his van and truck.
The evidence negates a reasonable hypothesis of innocence and is sufficient to support Housley's conviction as a principal to the burglary. LRS 15:438; Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Irvine, supra.

SENTENCE
Housley, age 35 at sentencing, has a lengthy criminal record dating from February 1976, four months after his 21st birthday. His first arrest, for attempted manslaughter, occurred when he shot the father of a young woman with whom he had been involved in an automobile accident. According to the PSI, the charge was "dropped by complainant." Later in 1976, Housley was convicted of aggravated assault and simple battery and was charged with simple damage to property and threatening the life of a police officer. In 1977, he was charged with attempted second degree murder, attempted aggravated rape and simple kidnapping for having forced a woman into his car at gunpoint and shooting her after she refused to have sex with him. The state dismissed the rape and kidnapping charges when Housley pleaded guilty to aggravated battery.
While serving an 8 ½ year sentence for the aggravated battery, Housley was convicted of simple escape in 1981. He was released on parole in 1984. His parole was revoked in 1987, after five arrests in 1986 for aggravated assault, two DWI offenses, hit and run driving, and driving under suspension. Some of these charges were dismissed when he pleaded guilty to others. He was charged with felony theft and illegal possession of stolen things in 1988, pleaded guilty in November 1989, a month after committing the burglary, and was serving an 18-month sentence for those *770 offenses when he was sentenced for the burglary.
Housley quit school in the 10th grade. He held "several odd jobs for varying lengths of time when he was not incarcerated," including jobs as a painter and farm worker for nine months in 1988 and 1989. He is not married and has no dependents.
The trial court gave these reasons for Housley's 12-year sentence:
Your conduct indicates to me, quite clearly, that you are in drastic need of a significant amount of incarceration in the state prison. To give you anything less than the maximum sentence authorized by law on this offense would deprecate the serious nature of the offense with which you were charged. It would not serve as an adequate deterrent to you. Because your past criminal record indicates that you are in need of custodial treatment in an institution. Not only to protect society, which it is clear that society needs protect[ion] from you. But it just doesn't serve as an adequate deterrent to give you anything less than the maximum sentence.
When a sentence is individualized, deterrence of both the accused and others is a legitimate object of a sentence for criminal conduct. State v. Tully, 430 So.2d 124 (La.App. 2d Cir.), writ denied, 435 So.2d 438 (La.1983).
Housley's sentence was individualized and factually supported under CCrP Art. 894.1 guidelines. We do not find it shocking under constitutional standards. See and compare State v. Brown, 410 So.2d 1043 (La.1982) and State v. Thompson, 520 So.2d 1116 (La.App. 3d Cir.1987).
Housley's co-defendant, Pugh, waived sentencing delays and was sentenced without a PSI, immediately after entering his guilty plea, to three years, the maximum term he bargained for. This record shows nothing of Pugh's personal and criminal background. The fact that they received different sentences for the same offense does not, of itself, substantiate Housley's contention that he received a greater sentence to penalize him for going to trial. See and compare State v. Cook, 465 So.2d 825 (La.App. 2d Cir.), writ denied, 467 So.2d 532 (La.1985), and State v. Davis, 537 So.2d 778 (La.App. 2d Cir.1989).

OTHER ARGUMENTS
Housley's complaint in his pro-se supplemental brief that he was denied the right to be present during jury selection and that his appointed counsel was ineffective at trial and "failed to perfect an appeal on the entire record" is without merit on this record. Housley did not file supplemental assignments of error in the trial court. Because his alleged absence during jury selection might arguably be considered an error patent, we have reviewed the court minutes, which indicate that Housley was present during jury selection. The voir dire transcript does not indicate otherwise.
If Housley has evidence outside this record that he was involuntarily absent during jury selection, he may file an application for post-conviction relief to assert that claim and his claim of ineffective assistance of counsel, which he has not detailed and which is not ordinarily reviewable on the appellate record. CCrP Arts. 831(3), 844, 920; State v. Woods, 444 So.2d 1332 (La.App. 2d Cir.1984); State v. Bonnett, 524 So.2d 932 (La.App. 2d Cir.), writ denied, 532 So.2d 148 (La.1988).

DECREE
Housley's conviction and sentence are AFFIRMED.