684 So.2d 6 (1996)
STATE of Louisiana, Appellee,
v.
Tyrone Joseph MITCHELL, Defendant-Appellant.
No. 96-207.
Court of Appeal of Louisiana, Third Circuit.
October 9, 1996.
Bernard E. Boudreaux, Jr., Dist. Atty., M. Bofill Duhe, New Iberia, for State of Louisiana.
William Robert Collins, New Iberia, for Tyrone Joseph Mitchell.
Before DOUCET, C.J., and YELVERTON and PETERS, JJ.
DOUCET, Chief Judge.
Defendant was charged by bill of information with simple burglary, in violation of La. R.S. 14:62 and possession of a firearm by a convicted felon, in violation of La.R.S. 14:95.1[1]. Defendant appeared before the court with court-appointed counsel for arraignment on July 25, 1995. At that time, he waived formal reading of the bill of information and entered a plea of not guilty to the charges. On September 6, 1995, the jury found defendant guilty of simple burglary. Thereafter, on October 6, 1995, defendant was sentenced to six (6) years at hard labor. Defendant now seeks review by this court alleging three assignments of error.

FACTS:
On May 16, 1995, defendant was apprehended while burglarizing Lowe's Lumber Company in Iberia Parish. We will discuss the facts in detail in our consideration of the defendant's assignment of error number one, infra.

ASSIGNMENT OF ERROR NO. 1:
By this assignment of error, defendant argues insufficiency of the evidence.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. *7 2781, 61 L.Ed.2d 560(1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La. 1983); State v. Duncan, 420 So.2d 1105 (La. 1982); State v. Moody, 393 So.2d 1212 (La. 1981).
La.R.S. 15:438 provides:
The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.
In incorporating this with the Jackson standard, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded. State v. Honeycutt, 438 So.2d 1303 (La.App. 3 Cir.), writ denied, 443 So.2d 585 (La.1983); State v. Morris, 414 So.2d 320 (La.1982).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). See also State v. Chism, 436 So.2d 464 (La.1983).
It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore the appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, 436 So.2d 559, citing State v. Richardson, 425 So.2d 1228 (La.1983).
Defendant was found guilty of simple burglary, in violation of La.R.S. 14:62, which provides: "[s]imple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, with the intent to commit a felony or any theft therein, other than as set forth in Section 60."
In order for the state to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. The elements of the crime of simple burglary which must be proven are: 1) entry into a structure; 2) the entry being unauthorized; and 3) the specific intent to commit a felony or theft therein.
Defendant contends that the evidence when taken as a whole and when weighed with his testimony is not convincing; thus the jury verdict should be reversed.
The following represents the circumstantial evidence the State presented to prove defendant committed the crime.
Officer Neil Burke, Sergeant Randy Bouillon[2], and Lieutenant Dickie Fremin testified they received a call from a passerby that there were subjects in the front bushes of Lowe's and that there was a suspicious red car parked at the Interfaith Church. Sergeant Bouillon testified that, upon investigation, the car proved to be a Chevrolet Beretta. Officer Neil Burke testified that while investigating a possible burglary in progress at Lowe's in the early morning of May 16, 1995, he observed four individuals exit the building and run toward him. When the individuals were close enough, approximately fifteen to twenty feet away, he drew his weapon and shined his flashlight advising the individuals to get down on the ground. However, they fled with two going in a westerly direction, and the others going in the opposite direction. Officer Burke testified he went to the back of the business to secure the east side of the perimeter. He stated that, as he took up his position, he noticed one of the individuals jump the fence and go into the woods. While attempting to assist Officer Burke, Sergeant Bouillon observed two men jump the fence along Bayard Street. He followed them on foot and announced his presence but the suspects continued to run. Sergeant Bouillon chased them westward across Bayard Street into a cane field. Sergeant Bouillon testified he called for assistance via radio, in an attempt to have other officers stop the suspects from getting into the car. The subjects then jumped the fence onto the property in the back of the Interfaith Church.
*8 Officer James Segura and Lieutenant Fremin, who responded to Sergeant Bouillon's call for assistance, noticed two subjects running along the inside of the fenced-in area of the church. Officer Segura exited his car and commanded the two subjects to stop. The suspects were then apprehended, handcuffed, and patted down prior to being placed in Officer Burke's car. At this point, Officer Segura noticed that defendant was barefoot. Officer Burke, Sergeant Bouillon, Officer Segura, and Lieutenant Fremin identified the defendant as one of the individuals who fled the yard at Lowe's and was apprehended at the Interfaith Church. Officer Burke, Sergeant Bouillon, and Officer Segura also testified a nylon strap and a small clock were found on defendant during the pat down. Officer Burke placed these items in an envelope marked prisoner property.
After the individuals were placed in Officer Burke's car, Officer Segura and the police dog jumped the fence of the Lowe's premises to check for more suspects. When Officer Segura got to the shed, he noticed the door had been forced open and radioed that a detective was needed at the scene. Officer Segura testified that after Detective Herring arrived, he and the detective checked the area where the subjects jumped the fence and ran into the cane field. It was obvious where the subjects ran because of the soft mud. While walking toward the church, he noticed a Polaroid camera laying in the cane field and a pair of sandals near the fence. He marked the location of the items and notified Detective Herring of his findings.
Detective Russell Herring testified on behalf of the State with regard to his investigation of the scene and the pictures he took during that investigation. Detective Herring testified he found a glove that was caught in the barbed wire on the top of the north fence. The witness also identified numerous pictures introduced by the State. These pictures depicted the warehouse door, in the condition in which he found it on May 16, 1995 (with pry marks); the four (4) weed eaters and two (2) cordless drills found immediately outside the warehouse door; two drawers of the filing cabinet in the secondary office of the warehouse which were forcibly opened; and a flashlight, which was still on, found sitting on a chair behind the desk inside the main office. Also identified by Detective Herring were pictures depicting the pry tool, the flashlight, and the sledge hammer found near the west fence; the Polaroid camera found in the cane field; and one of the sandals found near the east fence of the Interfaith Church.
Further, Detective Herring identified the sledge hammer believed to have been used to forcibly open the drawers inside the office, the flashlight, and the pry tool, all of which were found near the west fence inside the premises of Lowe's. Detective Herring indicated that because of the pry marks on the warehouse door, he was looking for a pry tool when he came upon the three objects near the west fence. Upon discovering the objects he assumed they were the tools used in the burglary. Based upon the flashlight he found in the main office, Detective Herring assumed the perpetrators would have needed another flashlight. The Polaroid camera found in the cane field west of Lowe's was also identified by Detective Herring along with the strap taken from defendant and given to him by Officer Burke. Detective Herring noticed the camera was missing its strap and placed the strap found on defendant into the slot in the back of the camera in defendant's presence. It fit perfectly, and defendant refused to respond when asked where he got the strap. Detective Herring also identified the quartz clock that Officer Burke recovered at the scene and handed to him at the New Iberia City Police Department.
Detective Herring that stated he secured several of the items in evidence bags and that besides taking pictures, he logged all the evidence. The witness further testified the pictures he identified accurately depicted the items' conditions during his investigation.
At the police station defendant was advised of his rights by Officer Burke. Defendant signed the advice of rights form in the presence of Officer Burke and Detective Herring. During questioning, defendant attempted to explain his presence at Lowe's, stating that he was retrieving a bucket of water for the vehicle. Further, defendant claimed the *9 clock in his pocket connected to the strap found around his neck. Detective Herring testified that on May 18, 1995, at the Iberia Parish Correctional Facility, defendant was once again read, and indicated that he understood, his Miranda rights. Detective Herring again questioned defendant about his involvement at Lowe's, whereupon defendant admitted to Detective Herring that, indeed, he had been inside the warehouse.
Detective Herring testified he did not find any fingerprints belonging to defendant on the pry tool, the flashlight, the camera, or the sledge hammer. When asked if he had proof that those tools were used in the burglary, Detective Herring responded negatively. Detective Herring also testified he did not know the actual time that the burglary took place nor did he know who handled which tools. Detective Herring testified that in his years of experience, the marks on the door were consistent with the use of the pry tool identified as State exhibit number 14 and the damage done to the locks on the file cabinet was consistent with the damage which would be inflicted by a sledge hammer similar to the sledge hammer identified as State exhibit number 13. Also the location of the tools was significant due to the information Detective Herring gathered from the other officers as to where defendant exited the yard. The witness stated that he neither looked for nor dusted for finger prints in the office or on the items recovered because, after he found a glove on the north fence, he concluded gloves were used in the burglary.
The sixth witness called on behalf of the State was Ronald Batiste. He testified he had previously pled guilty to the burglary of Lowe's and was sentenced to twelve (12) years at hard labor. Mr. Batiste identified the defendant in court as the person who was with him during the burglary at Lowe's on May 16, 1995. Although Mr. Batiste said he did not see defendant enter the warehouse or go inside the office, he stated defendant was in the yard with him. He testified that when defendant came out of the warehouse, he did not see anything in defendant's hands. Mr. Batiste did notice a string around defendant's neck which, he stated, looked like the one showed him in court and which was introduced as State number 17. Mr. Batiste testified defendant did not have the string around his neck prior to going into the warehouse and that he noticed no camera attached to the string around defendant's neck. Mr. Batiste did not have an explanation of how the camera got along the path he and defendant traveled. However, Mr. Batiste testified he saw the camera on the desk. He also saw defendant with the camera in his hands when he came out of the office. Mr. Batiste testified he did not handle the camera himself.
Mr. Batiste also testified that as part of his plea agreement he agreed to testify truthfully at defendant's trial. He denied writing or signing a letter to defendant saying defendant had nothing to do with the burglary. He stated he, defendant, and Francis Etienne went to Lowe's early on May 16, 1995, and that he and defendant were together when they jumped the fence in the back of the yard and ran into the cane field. Mr. Mills Rodgers, the store manager of Lowe's, and Ms. Evelyn Bouy, the receiving clerk for Lowe's, were also called to testify. Mr. Rodgers testified he was the store manager of Lowe's on May 16, 1995, and that he was the person who granted authorization to people to come onto the Lowe's property after hours. Mr. Rodgers testified he did not know defendant nor did he give defendant authorization to go onto Lowe's property the morning of May 16, 1995. Ms. Bouy testified her duties were to send defective merchandise back to the companies. Mr. Rodgers identified the door depicted in State exhibit number 4 as the door to the warehouse office. Both Mr. Rodgers and Ms. Bouy identified the four string trimmers and two cordless drills introduced as State's exhibits numbers 5 and 6. Ms. Bouy testified that on May 15, 1995, all of the weed eaters were kept in her office. Mr. Rodgers testified that when he left the store, at approximately 5:30 p.m. on May 15, 1995, all the items were secured inside the office. Ms. Bouy testified she left work on May 15, 1995, at 5:00 p.m. Mr. Rodgers and Ms. Bouy identified the Dewalt and Makita cordless drills which were kept in the drawer in the filing cabinet and introduced as State exhibit number 7. Ms. Bouy testified she did *10 not have a key to lock the cabinet, but the warehouse people secure the filing cabinet in the warehouse office and also her office. Mr. Rodgers identified the wooden filing cabinet from the warehouse office depicted in State exhibit number 8. He stated the picture showed a broken hasp on the lower drawer and that the hasp was intact when he left work on May 15, 1995.
Mr. Rodgers and Ms. Bouy identified the camera as the one which was kept in the filing cabinet in Ms. Bouy's office and used in the store to take pictures of damaged goods received from vendors. Ms. Bouy testified that the camera was not sold by Lowe's. Mr. Rodgers and Ms. Bouy also identified the clock as identical to the one kept on Ms. Bouy's desk in the warehouse. Ms. Bouy stated the RPS representative gave her the clock for opening an account with them. Both testified the clock was on Ms. Bouy's desk when they left work on May 15, 1995. Mr. Rodgers and Ms. Bouy testified the clock and the camera were not in the warehouse when they returned to the office after the burglary. Mr. Rodgers also testified the pry marks on the door were not there when he left work on May 15, 1995. Mr. Rodgers testified everything that was initially taken was recovered.
The last witness called to testify on behalf of the State was Raywood Bodin. Mr. Bodin testified he was employed at Lowe's on May 15 and 16, 1995, as the assistant warehouse manager. He stated his duties included making sure everything was locked before leaving. Lowe's closed at 7:00 p.m. on May 15, 1995. Prior to leaving work at around 7:15 or 7:30 that night, Mr. Bodin stated he closed the warehouse office, the gate and the back doors of the building. Mr. Bodin indicated the filing cabinet was closed and locked and that he personally locked the warehouse door. Mr. Bodin testified he neither knew defendant nor did he give defendant authorization to go onto Lowe's property on May 16, 1995.
Defendant testified that while at his house in St. Martinville, Sunday night, he called Ronald Batiste and told Mr. Batiste to pick him up Monday morning because he had a job in Jeanerette. However, defendant also testified he told Mr. Batiste to pick him up Sunday because he started his job on Monday at 7:00. Defendant stated he left St. Martinville at 11:00 Sunday night but never got to Jeanerette. When asked, "what if I was to tell you this happened on Tuesday morning, would that surprise you? Not Monday morning, Tuesday morning," defendant responded, "But, you see, that's way back, that's way back."
Defendant testified Francis Etienne was in the car with him and Mr. Batiste. Mr. Etienne came from Texas and the car was a rental. Defendant testified they drove to New Iberia and stopped at Penny Wise to put water in the car because it was overheating. While they were on their way to Jeanerette, they stopped at the church, lifted the hood, and saw smoke. Defendant stated they tried to "crank" it for about ten (10) minutes but it would not crank. Defendant testified they walked along the highway but did not see anyone so Mr. Batiste and Mr. Etienne went down Admiral Doyle towards a store to call someone. Defendant stated he remained behind to watch the car until the others came back. Seeing that they were not coming back, defendant opened the trunk and got a bucket. He stated he went in the direction the other two had gone, but did not see them. Defendant stated he never went onto the Lowe's premises.
Defendant testified that while he was walking down the road he heard someone say "Get down or I am going to shoot." He stated he became paranoid and scared because he did not know much about New Iberia nor did he know what was going on, so he dropped the bucket, ran into the cane field, and jumped a fence. When defendant jumped the fence near the cane field there were officers at the Interfaith Church. He was arrested afterwards and the police found the clock he bought in Texas and the string he found on the ground away from the premises. Defendant stated he would not risk his life by taking a string and a clock, that is why he was there to let the jury know he was not guilty.
When asked about Mr. Batiste's testimony concerning being at Lowe's with him, defendant testified Mr. Batiste wrote him a letter *11 the night prior to the trial stating that Mr. Batiste had to do that because of threats by the prosecutor that he would get more time. Defendant noted he was looking at more time than Mr. Batiste. He stated the people have the items back. Defendant testified he told them, like he told his mother, if something was missing, he would replace it.
Defendant testified Officer Burke never saw him because he was not there but, rather, he was identified because he was sitting next to defense counsel. Defendant stated that based upon the sentence which could be imposed, thirty-six (36) years if he was double billed, he would be an old man and never see anybody again; that is why he testified, to tell the truth even though his partners are scared because of the prosecutor.
Defendant also testified with regard to the items allegedly used in the burglary. Defendant testified his fingerprints were not on the camera, the pinch or nail bar, the sledge hammer, the flashlight, the weed eaters, nor anywhere on the premises. He stated he did not know who jimmied the door. Defendant also testified Ms. Bouy was assuming the clock was hers, but it was not hers because defendant bought the clock in Texas. He explained that he was going to use the cord which was found around his neck to tie the water bucket to his hand. Defendant admitted the shoes were his. Defendant indicated that he took the same path that Mr. Batiste had taken and that Mr. Batiste probably had the camera. Defendant testified he was never inside the building and denied robbing Lowe's. He also denied that he was there with Mr. Batiste or Mr. Etienne; he claimed he was only riding with them. Defendant denied jumping the fence and burglarizing the warehouse office at Lowe's with Mr. Batiste and Mr. Etienne. He denied stealing the weed eaters, the cordless drills, the clock, and the camera. Defendant admitted jumping the fence in the cane field but denied jumping the fence inside the premises. He denied talking to the officers, stating all he did was give a statement. Defendant testified the officers asked him if he broke into Lowe's, but he denied ever saying he did. Defendant also admitted that he was convicted of attempted robbery in 1987.
After carefully reviewing the testimony and the evidence, we find the case presented by the State excludes every reasonable hypothesis of innocence. The defendant was observed on the Lowe's premises in the early morning hours of May 16, 1995. He was also observed jumping the west fence at Lowe's, running in a cane field, and then jumping the fence at the Interfaith Church, where he was eventually apprehended. The arresting officer found a clock in defendant's front pocket and a camera strap around defendant's neck. Those items were later determined to be missing from a warehouse office at Lowe's which had been forcibly entered. Given the facts, we find no reasonable hypothesis which supports the defendant's claims of innocence. Thus, we find that the evidence, both direct and circumstantial, when viewed in the light most favorable to the prosecution, was sufficient for the trier of fact to find defendant guilty beyond a reasonable doubt. Accordingly, defendant's first assignment of error lacks merit.

ERRORS PATENT and ASSIGNMENT OF ERROR NO. 2:
In his second assignment of error, defendant request the court review the record for patent error(s).
La.Code Crim.P. art. 920 provides the scope of review on appeal, as follows:
The following matters and no others shall be considered on appeal:
(1) An error designated in the assignment of errors; and
(2) An error that is discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence.
In accordance with this article, all appeals are reviewed by the court for errors patent on the face of the record. We have reviewed the record and find no errors patent.

ASSIGNMENT OF ERROR NO. 3:
By defendant's third assignment of error, he argues a new trial should be granted because the verdict is contrary to the law and evidence in that there was insufficient evidence against the defendant to find him guilty of simple burglary. This assignment *12 of error was not briefed nor argued and is therefore considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.

CONCLUSION:
Accordingly, for the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The record contains no disposition of this charge and no appeal of the charge is before us.
[2] At the time of the trial, Sergeant Bouillon no longer worked for the New Iberia Parish Police Department, but, rather, was employed by the Iberia Parish District Attorney's Office.