700 So.2d 1051 (1997)
STATE of Louisiana, Appellee,
v.
Robin Anthony BULLARD, Appellant.
No. 29662-KA.
Court of Appeal of Louisiana, Second Circuit.
September 24, 1997.
Rehearing Denied October 23, 1997.
*1052 George W. Britton, III, Columbia, MS, for Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, H. Stephens Winters, Assistant District Attorney, for Appellee.
Before BROWN, STEWART and CARAWAY, JJ.
TEWART, Judge.
The defendant, Robin A. Bullard ("Bullard"), was charged with simple burglary, a violation of La. R.S. 14:62. A jury found the defendant guilty as charged. The trial court imposed a sentence of eight years imprisonment at hard labor. Bullard appeals urging six assignments of error. We affirm.

FACTS
On the evening of Saturday, February 17, 1996, Monroe resident Mark Weeks parked his pickup truck near his girlfriend's house on Mack Street in West Monroe. When he returned to his truck the next morning, he discovered that the truck's passenger-side door was open and that its stereo speakers were missing. Mr. Weeks did not report the crime because he believed it unlikely that police could recover his speakers.
However, on Wednesday, February 21, Mr. Weeks remembered that a box of new blank checks were in his truck at the time of the burglary. After Weeks thoroughly searched his truck but failed to find his checks, he called the Ouachita Parish Sheriff's Office (OPSO) to report the burglary. OPSO Deputy Daniel Peeler responded to the call and made out the report.
The next day, Deputy Peeler responded to a disturbance call at a Monroe gas station. The disturbance was an argument between Mr. Weeks and his nephew, Bullard. Monroe city police officers took Weeks, Bullard and Bullard's companion, one Mickey Johnston, into custody. When Deputy Peeler arrived, Bullard told him that Mickey Johnson had been responsible for breaking into Mr. Weeks' truck. The deputy then asked for and received Bullard's permission to search his van. Deputy Peeler found one of Mr. Weeks' checkbooks behind the drivers' seat of the van. Nine of the checks in the checkbook had been written to various gas station / convenience stores on February 21, and Mr. Weeks testified that he did not write any of those checks. Mr. Weeks also did not give *1053 his nephew, Bullard, or anyone else permission to enter his truck or take his checkbook.
After Bullard was arrested, he made a statement to OPSO Investigator Talmadge Stutts; this statement was recorded. The tape was played for the jury. In the statement, Bullard said that on Tuesday, February 20, between 1 and 3 a.m., he and Mickey Johnston were driving around West Monroe in Bullard's van "looking for a way to get some money ... [to] get high." Bullard said that the men spotted Mr. Weeks' truck and that Johnston asked him whether there was "anything in the truck." Bullard said that he told Johnston that he didn't know, and that Johnston then told him to stop, to let him out and to "make the block." The defendant said that he did this and picked up Johnston a few minutes later. Bullard said that Johnston did not appear to have anything with him and did not say that he had stolen any checks.
Bullard said that he did not see Johnston with anything suspicious until the next morning when Johnston pulled out a checkbook at a gas station; Bullard said that he knew that Johnston didn't have a checking account. Bullard admitted that he had driven Johnston to gas stations to cash the checks but denied that he had seen Johnston write the checks. Bullard said that he suspected but didn't know for sure that the checkbook belonged to his uncle until Mr. Weeks assaulted him. Bullard was charged by bill of information with one count of simple burglary. At a jury trial, the defendant did not testify. The trial court imposed a sentence of eight years imprisonment at hard labor. Bullard appeals urging six assignments of error. Assignments of Error # 3 and # 6 have been neither briefed nor argued and should be considered abandoned. U.R.C.A. Rule 2-12.4.

SUFFICIENCY OF EVIDENCE
In assignments of error one and two, Bullard alleges that the verdict is contrary to the law and the evidence, that the State failed to remove every reasonable hypothesis of innocence. He argues that the evidence was insufficient to convict him of simple burglary.

Law
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial error, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the essential elements of the crime have been proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.), writ denied, 605 So.2d 1089 (La.1992); State v. Hall, 26,505 (La. App.2d Cir. 12/7/94), 647 So.2d 453.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. Generally, direct evidence consists of testimony from a witness who actually saw or heard an occurrence, proof of the existence of which is at issue. State v. Turner, 591 So.2d 391 (La.App. 2d Cir.1991), writ denied, 597 So.2d 1027 (La.1992). Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude, according to reason and common experience, the existence of other connected facts. State v. Major, 604 So.2d 137 (La. App. 2d Cir.1992), writ denied, 609 So.2d 255 (La.1992).
The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. The circumstantial evidence rule of La. R.S. 15:438 does not establish a stricter standard of review than the more general Jackson v. Virginia formula, but a hypothesis of innocence that is sufficiently reasonable and sufficiently strong must necessarily lead a rational fact finder to entertain a reasonable doubt about guilt. State v. Daniels, 607 So.2d 620, 623 (La.App. 2d Cir.1992); State v. Major, supra.
*1054 An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988).
Whether circumstantial evidence excludes every reasonable hypothesis of innocence presents a question of law. State v. Daniels, supra. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Gray, 26,115 (La.App.2d Cir. 06/22/94), 639 So.2d 421, 425.
Bullard was found guilty of simple burglary, in violation of La. R.S. 14:62, which provides: "[s]imple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, with the intent to commit a felony or any theft therein, other than as set forth in Section 60."
To convict, the state must prove the elements of the crime beyond a reasonable doubt. The elements of the crime of simple burglary consist of: 1) entry into a vehicle; 2) the entry being unauthorized; and 3) the specific intent to commit a felony or theft therein. State v. Mitchell, 96-207 (La.App. 3d Cir. 10/9/96), 684 So.2d 6.
While the state admits that there was no proof that Bullard entered the victims' truck, the proof nevertheless was sufficient to convict the defendant as a principal.
La. R.S. 14:24 provides:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
Therefore, to convict the defendant of simple burglary, the jury had to find beyond a reasonable doubt that someone made an unauthorized entry into the victim's truck with the intent to commit a theft, and that Bullard was "a person concerned in the commission of the crime." State v. Irvine, 535 So.2d 365 (La.1988); State v. Housley, 577 So.2d 767, 768 (La.App. 2d Cir.1991), writ denied, 586 So.2d 540 (La.1991).

DISCUSSION
Mr. Weeks testified that his truck had been entered without his permission and that some of his property was removed at some time during the night of February 17-18. With this testimony, the state established that someone made an unauthorized entry into the vehicle with the intent to commit a theft. Bullard does not contest the fact that Weeks' truck was burglarized; rather, he contests the proof that he was the burglar.
Mr. Weeks testified that he was certain that his checks had been in his truck  and nowhere else  and that he first discovered them missing from the truck on February 21. He also said that his truck had not been broken into at any other time. Viewed in the light most favorable to the state, this testimony establishes that the checks must have been taken from the truck during the burglary on the 17th-18th.
Several large items were taken from Mr. Weeks' truck, but the only stolen item recovered from the Bullard's van was the checkbook. In his statement, Bullard said that he saw Johnston with nothing when he reentered the van. Because the stolen checkbook is small, the circumstantial evidence does not contradict the defendant's version of events in this respect. The presence of the checkbook in the defendant's van is also not conclusive proof that the defendant was a principal to the burglary. The state is not entitled to a presumption that a person in possession of recently stolen property committed a burglary. State v. Brown, 626 So.2d 851, 854 (La.App. 2d Cir.1993).
*1055 However, other evidence combines to make the state's proof sufficient. Weeks testified that he normally spent the night at his house in Monroe but had spent the night of the 17th-18th at his girlfriend's house on Mack Street in West Monroe. Bullard, in his statement, admitted that he and Mr. Johnston saw Mr. Weeks' truck as they drove on Mack Street between 1:00 a.m. and 3:00 a.m. but claimed that this occurred on the night of February 20. However, the night of the 17th-18th was the only night that Mr. Weeks said that his truck was at his girlfriend's house in West Monroe. Viewing this evidence in the light most favorable to the state, the jury could reasonably have concluded that the events described by the defendant in his statement took place on the night of the 17th-18th rather than on the 20th.
Bullard's statement, while not a confession, contained several relevant admissions and was admissible to show the extent of the defendant's knowledge of the crime. Bullard admitted in his statement that he and Mr. Johnston were driving around for the purpose of finding a way to get money. Next, he said that when they drove by Mr. Weeks' truck, Mr. Johnston asked whether there was anything in the truck and then asked the defendant to stop the van, let him out and drive around. No explanation was given for these unusual requests. Bullard said that he complied with Mr. Johnston's wishes and that he did not see Mr. Johnston with anything when he reentered Bullard's van. However, Mr. Weeks' checkbook was discovered in Bullard's van on the 21st and Bullard admitted driving Mr. Johnston  whom the defendant knew had no checking account  to numerous gas station / convenience stores on that day to cash Mr. Weeks' checks.
The jury was thus faced with a choice between competing hypotheses. On one hand, they could believe the defendant's implication that whatever was taken from Mr. Weeks' truck was taken by Mr. Johnston without the defendant's knowledge or consent and that the defendant was just an unwitting party in Johnston's scheme. In the alternative, the jury could believe that the defendant intended to take whatever valuable items were in the truck and facilitated the burglary by delivering Mr. Johnston to the truck and providing him with a means of escape after the crime.
The jury simply did not believe the hypothesis that the defendant did not intend to knowingly participate in this crime. In light of Mr. Weeks' testimony about the date his truck was at his girlfriend's house, the defendant essentially admitted in his statement that he was in the immediate area on the night of the burglary. The defendant admitted that he and Johnston were searching for money at the time but his story contained no plausible explanation of how they intended to lawfully obtain money by driving around in the middle of the night. This motive mitigates against the defendant's innocent explanation.
Next, Bullard admitted that he heard Johnston ask whether there was anything in Mr. Weeks' truck immediately prior to asking him to stop the van. Because the men were searching for a way to get some money, the jury could reasonably have concluded either that the defendant must have connected Johnston's actions to the quest for funds or that the defendant intended for Johnston to steal from the truck. No other explanation was offered or implied. See Housley, supra, where an innocent explanation under similar circumstances was offered but rejected.
The defendant's complicity in driving Mr. Johnston around to cash Mr. Weeks' checks  along with his admission that he suspected the checks belonged to his uncle  also tends to confirm his motive of searching for money and thus tends to refute his claim that he was not involved in the burglary.
While the defendant's exculpatory version of events is one possible scenario, the combination of circumstances surrounding this crime lend support to the jury's decision to reject this hypothesis as unreasonable. His motive, his highly unusual and unexplained actions on the night of the burglary and his complicity in enjoying the proceeds of the burglary are sufficient to render the defendant's *1056 story unreasonable and to support the conviction.
These assignments of error are meritless.

OTHER CRIME EVIDENCE
In assignment of error number four, the defendant argues that the trial court should not have admitted his statement to OPSO because it contained his admission of other crime evidence of forgery and the wrongful act of the defendant of attempting to secure money to purchase drugs. Defendant argues that the statement contained an admission that he and Mr. Johnston were looking for a way to get money to get high or buy drugs.
On appeal, the defendant asserts that the trial court erred in finding that the references to drugs and getting high in the statement were res gestae and also were exculpatory because the defendant indicated that only Mickey Johnston purchased drugs.
The record does not reveal that the defendant filed a motion to suppress his statement. The state filed a "Motion for Free and Voluntary Hearing;" at this hearing, the court determined that the defendant's statement was taken under legal circumstances and was admissible.
When the trial began, the defendant objected to the playing of the tape of his statement on the grounds that "there are a number of different potential crimes that are involved in the case" including forgery and looking for money for drugs and that evidence of these other crimes would predispose the jury to convict the defendant. The state responded by arguing that the defendant said that only Johnston bought drugs and that the forgeries were res gestae. The court basically adopted the state's reasoning and admitted the statement.
In State v. Bourque, 622 So.2d 198, 234 (La.1993) overruled on other grounds in State v. Comeaux, 699 So.2d 16 (La.1997) our Supreme Court stated:
The law is clear that when the state seeks to introduce a confession or statement of the defendant which contains other crimes evidence, the defendant has two options. State v. Morris, 429 So.2d 111, 121 (La. 1983).
He may waive his right to have the whole statement used, object to the other crimes evidence, and require the court to excise it before admitting the statement; or, he may insist on his right to have the statement used in its entirety so as to receive any exculpation or explanation that the whole statement may afford. A third alternative, that of keeping the whole statement out, is not available to defendant, unless, of course, the confession itself is not admissible.

Morris, 429 So.2d at 121; State v. Celestine, 443 So.2d 1091, 1096 (La.1983), cert. denied, 469 U.S. 873, 105 S.Ct. 224, 83 L.Ed.2d 154 (1984); State v. Sonnier, 379 So.2d 1336, 1355 n. 7 (La.1979).
In this case, as in Bourque, the defendant did not ask the court to excise only those parts of the statement which refer to other crimes  he asked the court to exclude the entire statement. This was not an available remedy, and was properly denied by the trial court.
In Bourque, the Supreme Court ended its inquiry after determining that counsel's motion was over broad in scope and held that the defendant's assignment of error was without merit. In this case, the defendant's motion was also over broad in scope.
Moreover, any prejudice toward the defendant inherent in these references is not great. Therefore, the evidence also clears the hurdle of La. C.E. art. 403 and the trial court's admission of the statements regarding drugs does not present reversible error.
The trial court properly denied the defendant's motion requesting the exclusion of the entire statement rather than excision of the objectionable parts, as the motion was over broad in scope. Also, the evidence complained of has an adequate basis for admission under La. C.E. arts. 404(B)(1) and 403. The assignment does not present reversible error.
This assignment of error is without merit.

MOTION FOR A CONTINUANCE
The defendant's assignment of error number five complains of the denial of a continuance *1057 because his motion for a preliminary examination had not been heard. This issue has not been argued in brief. Instead of the preliminary examination issue, the defendant argues in brief that the trial court erred in failing to grant him a continuance to ascertain the impact of a potential conflict of interest raised by his attorney's representation of another criminal defendant who had threatened him.
Defendant's original attorney waived the preliminary examination on May 16, 1996 but his subsequently enrolled attorney filed a written motion for a preliminary examination on May 22, 1996. Both of these motions were made when the charge against the defendant was simple burglary of an inhabited dwelling. On March 27, 1996 the state filed an amended bill of information charging the defendant with simple burglary. Defendant made no subsequent motion for a preliminary examination. The record does not show that a preliminary examination was held on either charge.
Even if the trial court erred by failing to hold such an examination, the error was made moot by the conviction of the defendant in the absence of a showing of prejudice. See State v. Gates, 24,995 (La. App.2d Cir. 1/19/94), 630 So.2d 1345, writ denied 94-0640 (La.6/17/94), 638 So.2d 1091 citing State v. Washington, 363 So.2d 509 (La.1978). The defendant has not argued the issue in brief and he has failed to show prejudice. Likewise, a failure to continue the case for purposes of a preliminary examination presents no error under these circumstances.
As to the potential conflict of interest, on the morning of the trial the prosecutor informed the court and defense counsel that the defendant had given the state an affidavit stating that he had been threatened by a Mr. Underwood to provide favorable evidence in Mr. Underwood's case. Defense counsel told the court that he also represented Mr. Underwood and orally moved the court for a continuance in the defendant's case to determine the nature and extent of the conflict, if any. The court permitted the parties to confer about the matter while it proceeded with other pending matters.
After conference, the defendant repeated his request for a continuance to determine the extent of the potential conflict between the defendant and Underwood. Underwood was charged in a forgery case and the defendant had agreed to testify against him. The minutes reflect that Bullard also had pending forgery charges at this time. Defense counsel indicated that he did not know whether the checks forged by Underwood had anything to do with the stolen checks in this case and said that his representation of both men would likely present a conflict. The state responded by telling the court that the Underwood case had nothing to do with the burglary case against the defendant but might present a conflict on the forgery charges. After hearing arguments, the court denied the motion for a continuance. Trial began later that afternoon.
As both sides point out, the Criminal Procedure Code stipulates that a motion for a continuance must be made in writing but, under extenuating circumstances, an oral motion is sufficient. State v. Washington, 407 So.2d 1138 (La.1982); State v. Parsley, 369 So.2d 1292 (La.1979); La.C.Cr.P. art. 707. Because the record shows that defense counsel learned of the potential conflict on the day of trial and just before he orally moved for a continuance, extenuating circumstances appear to be present in this case. Certainly the trial court heard arguments on the issue and seriously considered and decided the matter. Therefore, despite his awkwardly worded assignment of error and the oral motion, the defendant should be entitled to review of this question on appeal.
The defendant argues on appeal that the court should have continued the case because defense counsel could have had a conflict of interest by representing both the defendant and Underwood but had insufficient information to make that determination. Specifically, the defendant argues that his counsel knew nothing about the nature of his statement about Underwood or whether the witnesses at trial would be connected to that statement. He also argues that his counsel had no knowledge whether the forgery evidence to be offered as res gestae at his trial had any connection with the forgery case *1058 involving Mr. Underwood. The state argues that there has been no showing of an abuse of discretion.
The decision whether to grant or refuse a motion for a continuance rests within the sound discretion of the trial judge and a reviewing court will not disturb such a determination absent a clear abuse of discretion. La.C.Cr.P. art. 712; State v. Bourque, supra, 622 So.2d at 224. Each determination is case-specific. Generally, convictions will not be reversed for the improper denial of a motion for continuance absent a showing of specific prejudice. State v. Strickland, 94-0025 (La.11/1/96), 683 So.2d 218, 229.
Although conflicts of interest can present serious difficulties in criminal representation, the defendant has utterly failed to show the actual occurrence of any of the potential harms raised by his motion to continue. There was no reference  direct or indirect  to Mr. Underwood during the defendant's trial. The only evidence of forgery introduced at the trial was Mr. Weeks' checkbook that the defendant claimed Mr. Johnston stole and used. This was not connected at trial with Mr. Underwood in any way. The defendant has failed to show any evidence of a conflict of interest of any type pertaining to this case.
Therefore, even if the denial of the continuance was error, it does not present reversible error because the defendant suffered no demonstrable prejudice therefrom.
This assignment of error is without merit.

CONCLUSION
The defendant's conviction and sentence are affirmed.
AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, STEWART, GASKINS, CARAWAY and PEATROSS, JJ.
Rehearing denied.