*881
 
 WILLIAMS, J.
 

 |tThe defendant, Mark Richie, was charged by amended bill of information with three counts of armed robbery, violations of LSA-R.S. 14:64, and two counts of attempted armed robbery, violations of LSA-R.S. 14:64 and 14:27. After a jury trial, defendant was found guilty of three counts of armed robbery and one count of attempted armed robbery. He was sentenced to 45 years’ imprisonment at hard labor without the benefit of parole, probation or suspension of sentence for each conviction, with all of the sentences to be served concurrently. The defendant appeals. For the following reasons, we affirm defendant’s convictions and sentences.
 

 FACTS
 

 On November 2, 2005, the defendant was arrested by officers responding to a complaint about a suspicious person in the vicinity of Haskell’s Donut Shop in Monroe, Louisiana. At the time of his arrest, the defendant had been driving a gray Pontiac Grand Am from which deputies recovered a black trench coat, a Halloween mask and a black and silver butterfly knife. A subsequent search of the vehicle yielded a .177 caliber semi-automatic pellet (BB) pistol.
 

 After his arrest, the defendant was taken to the Investigative Division of the Oua-chita Parish Sheriffs Office, where he was read and subsequently waived his
 
 Miranda
 
 rights. Defendant gave a statement that he had gone to Haskell’s Donut Shop that morning with the intent to commit a robbery, but had changed his mind and was returning home when he was apprehended by sheriffs deputies.
 

 On November 16, 2005, the defendant gave a series of recorded 12statements after making a written request to speak to investigators. The defendant was advised of his
 
 Miranda
 
 rights and signed a separate rights waiver form before giving each statement. During these recorded statements, the defendant confessed to his participation in two separate robberies of employees in a novelty shop named The Red Door, his attempted robbery of a man at the spillway near West Monroe, and his presence at Haskell’s Donut Shop on November 2, 2005.
 

 Specifically, defendant stated that on the evening of October 27, 2005, at the urging of his wife, he robbed an employee of The Red Door while his wife waited in their vehicle parked at the Lakeshore Lounge located nearby. Defendant said that when all the customers had gone, he put on a mask, pulled out a BB gun, walked inside the store and approached the female employee at the counter. Frightened at the sight of the masked defendant carrying a gun, she complied when ordered to open the cash register. The defendant took approximately $670 out of the register, grabbed a cordless phone from the counter and ran out of the store. He discarded the telephone in the bushes, jumped the fence at B & L Marine, an adjacent business, and ran across the lot to his vehicle.
 

 Defendant also admitted that on October 28, 2005, he tried to rob a man who was unloading his boat from a trailer near the spillway in West Monroe. The defendant used the same Halloween mask, BB gun and trench coat as in the previous robbery. He approached the man from behind and startled him. When the defendant demanded that the man turn over his wallet, the man refused and struck the defendant in the head. Faced with the |sman’s persistent refusal to give up his wallet, the defendant returned to his car where his wife was waiting and they fled the scene.
 

 Defendant also confessed that several days after the first armed robbery of The Red Door employee, he returned to com
 
 *882
 
 mit another robbery at the establishment with his wife and a third individual called “Red.” The defendant stated that after waiting for the customers to leave, he and Red entered the store. The defendant was again armed with the BB gun and wore the same black trench coat and mask he had used in the two previous robberies. The defendant went to the register while Red covered the door. This time there were two female employees in the store, one of whom was the same woman who had been working there during the first robbery. The defendant pointed the gun at the clerk behind the counter and told her to open the register. He took approximately $250 out of the register and picked up a white cordless phone as he left. He and Red then returned to the vehicle where the defendant’s wife was waiting with the car running.
 

 In his last statement, the defendant recounted that on November 2, 2005, he was “fed up” with his wife’s constant coaxing to engage in criminal conduct and he told her he would commit a robbery at the donut shop. The defendant went to Haskell’s Donut Shop, approached the window and ordered some kolaches. While ordering, defendant saw that a customer approached the drive-thru window and then drove away. He told the attendant that he had left his money in the car and would be right back. Instead of returning, he drove away from the shop. A short time later, the defendant was stopped and arrested by police responding to a suspicious | ^person complaint.
 

 The defendant was charged with three counts of armed robbery, one count for the first robbery at The Red Door when one store employee was present and two counts for the second robbery at The Red Door when two employees were present. He was also charged with the attempted armed robberies of Grover Smith at the spillway in West Monroe on October 28, 2005, and of a worker at Haskell’s Donut Shop on November 2, 2005.
 

 After a jury trial, the defendant was found guilty of three counts of armed robbery and one count of attempted armed robbery of Grover Smith. The defendant was found not guilty of attempted armed robbery at the donut shop. The trial court sentenced defendant to serve 45 years at hard labor without benefit of parole, probation or suspension of sentence for each conviction, with the sentences to run concurrently. This appeal followed.
 

 DISCUSSION
 

 The defendant contends the trial court erred in allowing an in-court identification by a witness. The defendant argues that he was denied a fair trial by the unreliable and suggestive identification by Linda Hust, who had not given a prior description of the defendant and who had been drinking. The defendant also complains that Jenene Streeter was allowed to give character evidence when she testified that she sensed “an evil presence” when she saw the defendant at Haskell’s Donut Shop on the morning of November 2, 2005.
 

 In examining a record for sufficiency of evidence, the appellate court standard of review is whether, after viewing the evidence in the light most |fifavorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Tate,
 
 2001-1658 (La.5/20/03), 851 So.2d 921, cert.
 
 denied,
 
 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004);
 
 State v. Carter,
 
 42,894 (La.App.2d Cir.1/9/08), 974 So.2d 181,
 
 writ denied,
 
 2008-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in LSA-C.Cr.P. art. 821, does not provide the appellate court with a vehicle
 
 *883
 
 to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 2005-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Robertson,
 
 96-1048 (La.10/4/96), 680 So.2d 1165.
 

 The
 
 Jackson
 
 standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime.
 
 State v. Sutton,
 
 436 So.2d 471 (La.1983);
 
 State v. Owens,
 
 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610,
 
 writ denied,
 
 98-2723 (La.2/5/99), 737 So.2d 747. A defendant’s confession is direct evidence, for it is an acknowledgment of guilt for which no inference need be drawn. LSA-R.S. 15:449;
 
 State v. McNeal,
 
 34,593 (La.App.2d Cir.4/4/01), 785 So.2d 957;
 
 State v. Jones,
 
 451 So.2d 35 (La.App. 2d Cir.),
 
 writ denied,
 
 456 So.2d 171 (La.1984).
 

 When the key issue is the defendant’s identity as the perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof.
 
 State v. Hughes,
 
 2005-0992 (La.11/29/06), 943 So.2d 1047;
 
 State v. Powell,
 
 27,959 (La.App.2d Cir.4/12/96), 677 So.2d 1008,
 
 writ denied,
 
 96-1807 (La.2/21/97), 688 So.2d 520. A witness’s failure to identify the suspect at a pretrial lineup does not constitute grounds to bar an in-court identification, but, rather, goes to the weight of that witness’s testimony; evidence may be introduced to explain any discrepancy.
 
 State v. Long,
 
 408 So.2d 1221 (La.1982);
 
 State v. Ford,
 
 26,422 (La.App.2d Cir.9/21/94), 643 So.2d 293.
 

 At trial, the state introduced the testimony of Linda Hust, who stated that on the evening of October 29, 2005, she and a friend were at the Lakeside Lounge drinking beer when she witnessed the defendant coming through a fence at B & L Marine. On cross-examination, Hust testified that she did not see a trench coat, a mask, a gun or another male accompanying the defendant. Another witness called by the state was Jenene Streeter, who testified that on November 2, 2005, she had stopped at the Haskell’s Donut Shop drive-thru when she witnessed the defendant walk up to the store. Feeling uneasy, she drove away without placing an order and with the intent to call for help.
 

 Linda Hust’s identification of the defendant as the man she saw|7coming through a fence between the store where an armed robbery had occurred and the Lakeshore Lounge is circumstantial evidence as to his participation in one of the armed robberies at The Red Door. Absent any other evidence, this identification would be insufficient to convict the defendant even when viewed in the light most favorable to the prosecution. However, the record contains direct evidence supporting defendant’s convictions in the form of his recorded confessions to two armed robberies at The Red Door. Furthermore, in one recorded confession the defendant expressly stated that after robbing The Red Door worker, he had jumped the fence at B & L Marine, where Linda Hust testified that she had seen him.
 

 In weighing the credibility of Hust’s testimony, the jury was able to consider the circumstances leading to her identification of defendant, such as whether she was intoxicated the night of the crime or whether she had viewed any pre-trial line
 
 *884
 
 ups involving the defendant. The jury could reasonably have found Hust’s identification unreliable, while accepting the defendant’s confession to committing the armed robberies at The Red Door.
 

 Regarding Streeter’s testimony about her sense of unease at the sight of defendant at Haskell’s Donut Shop, defendant contends that this was inadmissible bad character evidence. However, Streeter never gave any indication that she knew the defendant in any manner that would lead the jury to believe she could testify as to his character. Additionally, the defendant was found not guilty of the attempted armed robbery at the donut shop, indicating that the jury gave little or no weight to Streeter’s testimony as to her perceptions of the defendant’s intent on that day. Thus, any error |sm the admission of that testimony was harmless. The assignment of error lacks merit.
 

 Sentencing
 

 The defendant contends the trial court erred in imposing an excessive sentence. Defendant argues that a less harsh sentence would be appropriate in light of the evidence suggesting that defendant did not intend to harm the victims and the mitigating factors present in the record.
 

 LSA-C.Cr.P. art. 881.1 precludes the defendant from presenting sentencing arguments to the court of appeal that were not presented to the trial court. Here, the defendant did not file a motion to reconsider sentence. In such a circumstance, the defendant is simply relegated to having the appellate court consider the bare claim of constitutional excessiveness.
 
 State v. Mims,
 
 619 So.2d 1059 (La.1993);
 
 State v. Masters,
 
 37,967 (La.App.2d Cir.12/17/03), 862 So.2d 1121;
 
 State v. Duncan,
 
 30,453 (La.App.2d Cir.2/25/98), 707 So.2d 164.
 

 A sentence violates La. Const, art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering.
 
 State v. Smith,
 
 2001-2574 (La.1/14/03), 839 So.2d 1;
 
 State v. Dorthey,
 
 623 So.2d 1276 (La.1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice.
 
 State v. Weaver,
 
 2001-0467 (La.1/15/02), 805 So.2d 166;
 
 State v. Robinson,
 
 40,983 (La.App.2d Cir.1/24/07), 948 So.2d 379;
 
 State v. Bradford,
 
 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
 

 |9The sentencing range for armed robbery is imprisonment “at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence.” LSA-R.S. 14:64(B). The maximum sentence defendant could receive for attempted armed robbery was imprisonment at hard labor for not more than 49½ years, without benefit of parole, probation, or suspension of sentence. LSA-R.S. 14:64(B) and 14:27(D)(3).
 

 At sentencing, the trial court reviewed the defendant’s social and criminal history as reflected in the presentence investigation report, including the defendant’s prior felony convictions for simple burglary and attempted simple burglary. The court thoroughly discussed the circumstances surrounding the defendant’s crimes and the applicable aggravating and mitigating circumstances. The court emphasized the risk of violence or great bodily hai-m which his use of a weapon presented, the fact that his victims suffered a significant economic loss of approximately $1,200 and the likelihood that defendant would commit another offense. The trial court found that removal of the defendant as a role model for his four minor children would not constitute an excessive hardship to their welfare. The court noted that the defendant appeared to have been a follower in the
 
 *885
 
 context of his criminal activity insofar as his wife seemed to have been the primary moving force behind their felonious lifestyle.
 

 Defendant contends the trial court should have given more weight to the evidence that he did not intend to harm the victims of his crimes. However, as the trial court pointed out, the defendant placed the safety of | ^others in jeopardy when he pointed a pellet gun at his victims, who testified that they felt threatened by the defendant’s acts. In addition, the court expressly considered the sentencing factors raised by defendant, including his age, his four children and his work as an electrician.
 

 The record demonstrates that the trial court provided ample reasons for the imposition of these concurrent sentences, which are neither grossly disproportionate to the severity of the offenses committed nor shocking to the sense of justice. There is no showing that the district court abused its discretion in sentencing this defendant. Thus, we cannot say the sentences imposed are constitutionally excessive. The assignment of error lacks merit.
 

 We have examined the record for error patent and found none.
 

 CONCLUSION
 

 For the foregoing reasons, the defendant’s convictions and sentences are affirmed.
 

 AFFIRMED.