WILLIAMS, J.
 

 hThe defendant, Larry Lewis, was charged by bill of information with possession of a Schedule II controlled dangerous substance (CDS), cocaine, in an amount greater than 28 grams, but less than 200 grams, in violation of LSA-R.S. 40:967(F)(l)(a). After a trial by jury, the defendant was found guilty as charged. The state then filed an habitual offender bill of information alleging that the defendant was a third-felony offender. The defendant’s motions for new trial and for post-verdict judgment of acquittal were denied. Subsequently, the trial court adjudicated the defendant a third-felony offender and, as per LSA-R.S. 15:529.1, imposed the mandatory sentence of life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence. The court denied defendant’s motion to reconsider sentence. The defendant appeals his conviction and sentence. For the following reasons, we affirm.
 

 FACTS
 

 At approximately 5 p.m. on June 16, 2009, Shreveport Police Officer Josh May-field was dispatched to investigate a narcotics complaint at a residence in Shreveport, Caddo Parish. Officer Mayfield knocked on the door and spoke with defendant, who said that he was the homeowner and that three other persons were in the house at the time. Officers Jason Frazier and Brandon Parker arrived on the scene as backup and the police checked the names of the individuals for any active arrest warrants. Because only the defen
 
 *607
 
 dant was subject to an active warrant, the police allowed the other individuals to leave the scene.
 

 When asked by Officer Mayfield if there were narcotics in the house, |2defendant said no and gave oral consent to a search of the residence. Police did not find any narcotics during this initial search, but found a digital scale, latex gloves and plastic sandwich bags, indicating possible illegal narcotic activity. Officer Mayfield then obtained the defendant’s written consent to have a K-9 unit search the home for narcotics. As a result of the K-9 search, police found 75 grams of crack cocaine inside a stereo speaker. After being informed of his
 
 Miranda
 
 rights, the defendant stated that he understood his rights and admitted that the cocaine was his. Defendant was arrested and charged with possession of more than 28 grams, but less than 200 grams, of cocaine. Following a hearing, the trial court found that the defendant’s statements to the police were freely and voluntarily made.
 

 After a jury trial, the defendant was found guilty as charged. The trial court adjudicated the defendant a third-felony offender and imposed the mandatory sentence of life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence. The defendant’s motion to reconsider and deviate from the statutorily mandated sentence was denied. This appeal followed.
 

 DISCUSSION
 

 The defendant contends the evidence presented was insufficient to support his conviction. Defendant argues that the state failed to prove the element of knowing or intentional possession of the cocaine by relying solely on his statement to police that the cocaine belonged to him, despite the possibility that the other people who were in the house could have hidden the drugs while Officer Mayfield was talking to defendant outside.
 

 |aThe criteria for evaluating. sufficiency of evidence is whether, upon viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found all the elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Gray,
 
 26,115 (La.App.2d Cir.6/22/94), 639 So.2d 421. That standard, now legislatively embodied in La.C.Cr.P. art. 821, is applicable to cases involving direct and circumstantial evidence.
 
 State v. Charleston,
 
 33,393 (La.App.2d Cir.6/23/00), 764 So.2d 322. A defendant’s confession is direct evidence, for it is an acknowledgment of guilt for which no inference need be drawn. LSA-R.S. 15:449;
 
 State v. Richie,
 
 44,783 (La.App.2d Cir.10/28/09), 25 So.3d 879. LSA-R.S. 40:967(F)(l)(a) prohibits the knowing or intentional possession of 28 grams or more, but less than 200 grams, of cocaine.
 

 In the present case, Officer Frazier testified that in June 2009, he responded to a narcotics complaint at a residence on Freewater Street to assist Officer May-field. Officer Frazier stated that when he arrived at the scene, he saw Mayfield and another officer speaking with defendant and several other individuals in front of the house. Frazier testified that the others were released because there were no outstanding warrants on them. He stated that defendant verbally agreed to a search of the residence. Officer Frazier testified that during the search the police found a digital scale, plastic baggies and latex gloves in the house and decided another search was necessary because these items suggested drug activity. A K-9 officer was called to the scene and defendant signed a form consenting to |4the second search. The police dog alerted to three
 
 *608
 
 separate areas in the home that the officers then searched. Officer Frazier testified that in the southwest bedroom of the house, the police found a cell phone box, which contained a large amount of cash and that “hash marks” were written on the inside cover, indicating that the owner had been counting something. Frazier stated that the police also found a bag containing crack cocaine inside a stereo speaker in the same room. Frazier testified that Mayfield advised defendant of his
 
 Miranda
 
 rights and that defendant admitted the crack cocaine was his.
 

 Officer Mayfield testified that on June 16, 2009, he responded to a complaint of drug activity at a house on Freewater Street in Shreveport. Mayfield stated that he spoke with defendant, who said that he was the homeowner and that three other persons were present at the house. Officer Mayfield was assisted at the scene by Officers Frazier and Parker.. They checked the names of those present and learned that there was an active arrest warrant for defendant, but not for the others, who were allowed to leave the scene. Officer Mayfield testified that the defendant verbally consented to a search of the residence and the officers observed a small digital scale in the kitchen and boxes of plastic sandwich bags in a bedroom. Mayfield stated that in combination, those items caused him to suspect drug activity in the house. He then obtained the defendant’s written consent for a K-9 search of the residence. Officer Mayfield testified that after the K-9 search, police found a box containing a large sum of money and a bag of suspected crack cocaine that was hidden inside a stereo speaker. Officer | ¡¡Mayfield stated that a field test of the substance was positive for cocaine and that the material weighed 75.5 grams. Officer Mayfield stated that after the cocaine was found, he apprised defendant of his
 
 Miranda
 
 rights and then asked him about the cocaine. The defendant responded that there were no more drugs in the house and admitted that the cocaine belonged to him. On cross-examination, Officer Mayfield acknowledged that defendant had said he smoked- “dope,” and did not use the word cocaine. Officer Mayfield explained that the term “dope” is used by police to mean “narcotics,” and could refer to marijuana.
 

 Officer Clint Cane, a K-9 dog handling expert, testified that he was dispatched to the scene to conduct a search. Officer Cane stated that the police dog alerted to several areas in the house. Officer Cane testified that within those areas police found the phone box containing money and the crack cocaine hidden inside the stereo speaker.
 

 Bruce Stentz, an expert in forensic chemistry, testified that he worked at the North Louisiana Crime Lab. Stentz stated that the lab received from the police a bag, marked as State’s Exhibit No. 2, containing a white substance. Stentz testified that he performed tests which showed that the substance was crack cocaine, with a weight of 75 grams.
 

 Contrary to defendant’s argument, sufficient evidence was presented to convict him of possession of cocaine in an amount greater than 28 grams, but less than 200 grams. The defendant’s statement to police that the cocaine belonged to him was direct evidence of his guilt. Defendant also told police that he used and sold “dope.” Although the testimony of police Rat trial supported the defendant’s claim that the term “dope” is susceptible to different meanings, the word is also used to describe cocaine. Therefore, defendant’s statement that he used dope corroborated his confession that the cocaine found in his bedroom belonged to him.
 

 
 *609
 
 Additionally, Officer Mayfield testified that during the initial search he discovered certain items (sandwich bags, a digital scale and latex gloves) that he believed were associated with narcotics activity, given his past experience investigating narcotics cases. Then, after Officer Cane searched the residence with his K-9 partner, police found 75 grams of crack cocaine in the defendant’s bedroom. Thus, based upon the factual circumstances established by the evidence presented, the jury could have reasonably concluded that defendant knowingly possessed the cocaine seized from his residence and was not “covering” for another. Consequently, the record contains sufficient evidence from which a rational trier of fact could have found beyond a reasonable doubt that defendant was guilty of possession of cocaine in an amount greater than 28 grams, but less than 200 grams. This assignment of error lacks merit.
 

 Right to Counsel
 

 The defendant contends the trial court erred in forcing him to go to trial without the attorney retained for him by his family. Defendant argues that he was denied his constitutional right to retain counsel of his choice when the court ordered the trial to proceed with appointed defense counsel.
 

 Both the federal and state constitutions provide that an accused has the right to counsel of his own choosing to defend him in a criminal charge. |7However, this right does not permit the arbitrary action which obstructs orderly procedures in the courts.
 
 State v. Leggett,
 
 363 So.2d 434 (La.1978);
 
 State v. Reeves,
 
 2006-2419 (La.5/5/09), 11 So.3d 1031;
 
 State v. Wilson,
 
 45,060 (La.App.2d Cir.3/10/10), 32 So.3d 1152. Rather, the right to choose one’s attorney is a right to be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage within the procedural framework of the criminal justice system.
 
 State v. Leggett, supra.
 
 There is no constitutional right to make a new choice of counsel on the very date the trial is to begin, with the attendant necessity of a continuance and the resulting disruption to the orderly trial of cases. On the day of trial, the question of withdrawal of counsel rests largely within the discretion of the trial court. The Louisiana Supreme Court has consistently upheld the trial court’s denial of motions for continuances or withdrawal of counsel made on the day of trial when defendant is dissatisfied with his present attorney, but had ample time to retain private counsel.
 
 Leg-gett, supra.
 

 In this case, on the day of trial, defendant sought a continuance on the grounds that the private attorney retained for him was not present in court. Following a recess, the trial court stated that the attorney whom defendant sought to retain had been contacted and had informed the court that it would be beneficial for him not to enroll if the trial was proceeding and counsel had been appointed. The trial court noted that the private attorney had not filed a motion to enroll as counsel and that the trial had previously been continued to give defendant time to retain an attorney. After ensuring that defendant’s appointed counsel was prepared, the trial court ruled that the |8case would proceed with appointed counsel representing defendant.
 

 The record shows that the defendant requested the continuance on the day of trial after the trial date had already been continued once to allow defendant to retain counsel. The allegedly retained attorney never enrolled as counsel for defendant. To the contrary, the attorney informed the court that if the trial was to proceed and counsel had been appointed then he would not enroll. The defendant had more than adequate time to retain an attorney and
 
 *610
 
 was represented by appointed counsel who told the trial court they were prepared for trial. Consequently, the trial court did not abuse its discretion in denying defendant’s motion for a continuance seeking another opportunity to retain a private attorney to represent him at trial. This assignment of error lacks merit.
 

 Motion to Quash
 

 The defendant contends the trial court erred in denying his motion to quash the bill of information and allowing the state to amend the bill after jury selection. Defendant argues that a mistrial should have been ordered because the bill of information charged him with an offense that did not exist and this error of substance could not be amended once trial had begun.
 

 The bill of information must inform the defendant of the nature and cause of the accusation against him in sufficient detail to allow him to prepare for trial, as well as to allow the court to determine the admissibility of the evidence. La. Const., Art. I, § 13;
 
 State v. Lee,
 
 39,088 (La.App.2d Cir.10/27/04), 888 So.2d 305.
 

 LSA-C.Cr.P. art. 487 provides, in pertinent part:
 

 LA. An indictment that charges an offense in accordance with the provisions of this Title shall not be invalid or insufficient because of any defect or imperfection in, or omission of, any matter of form only, or because of any miswriting, misspelling, or improper English, or because of the use of any sign, symbol, figure, or abbreviation, or because of any similar defect, imperfection, omission, or uncertainty exists therein. The court may at any time cause the indictment to be amended in any respect to any such formal defect, imperfection, omission or uncertainty.
 

 Before the trial begins the court may order an indictment amended with respect to a defect of substance. After the trial begins a mistrial shall be ordered on the ground of a defect of substance.
 

 A jury trial commences when the first prospective juror is called for examination. LSA-C.Cr.P. art. 761. A defect of substance as contemplated by Article 487 is intended to mean a defect which will work to the prejudice of the party accused.
 
 City of Baton Rouge v. Norman,
 
 290 So.2d 865 (La.1974);
 
 State v. Lee, supra.
 
 Even when the bill of information supplies the completely wrong section number or statute, the conviction is upheld if the defendant was given fair notice and identity of the offense and does not claim surprise or prejudice.
 
 State v. Lee, supra.
 

 After the jury was selected in this case, the defendant made an oral motion to quash the bill of information alleging that the crime charged in the bill did not exist under Louisiana law. Specifically, defendant explained that the bill of information incorrectly charged him with “possession with intent to distribute over 28 grams, but not more than 200 grams of cocaine.” The defendant claimed that this defect prevented his proper preparation for trial because the defense had already conducted voir dire based on a charge with a specific intent element. The trial court, noting that the issue of intent | into distribute was never raised during voir dire, denied the defendant’s motion to quash and allowed the state to amend the bill of information.
 

 Because the amendment was made after the jury had been selected, the initial issue is whether the defect in the bill of information was one of substance or merely one of form. A review of the bill of information shows that the defect fell into the latter category. Prior to the state’s amendment, the bill of information charged defendant with:
 

 COUNT 1: did knowingly or intentionally possess more than 28, but less than
 
 *611
 
 200 grams of CRACK COCAINE with intent to distribute a controlled dangerous substance classified in Schedule II, CDS to-wit: CRACK COCAINE
 

 The bill cited LSA-R.S. 40:967(A)(1)— the statute criminalizing possession with the intent to distribute cocaine. The state amended the bill to charge defendant with a violation of LSA-R.S. 40:967(F)(l)(a), possession of cocaine in an amount greater than 28 grams, but less than 200 grams. Although the pre-amended bill of information charged defendant with a combination of two offenses, he was aware that he was being charged with possession of more than 28 grams, but less than 200 grams, of cocaine. Thus, the defendant received fair notice and identity of the offense.
 

 In addition, the defendant failed to demonstrate prejudice or surprise as a result of the defect in the bill. Although defendant argues that he was prejudiced during voir dire because of the erroneous bill of information, the trial court found that the prospective jurors were never questioned regarding the intent to distribute cocaine. We note that defendant did not include the voir dire proceedings in his designation of the record for appellate review. Based upon this record, the trial court did not commit reversible error inj^allowing the state to amend the bill of information. The assignment of error lacks merit.
 

 Video Evidence
 

 The defendant contends the trial court erred in admitting video evidence that was not timely provided to defense counsel. Defendant argues that the video should not have been shown to the jury because the defense was unable to finish viewing the material after the state had initially provided a blank disk, leaving the defense with inadequate time to prepare.
 

 The purpose of discovery rules in criminal trials is to eliminate unwarranted prejudice from surprise testimony.
 
 State v. Toomer,
 
 395 So.2d 1320 (La.1981);
 
 State v. Williams,
 
 25,835 (La.App.2d Cir.2/23/94), 632 So.2d 893. The failure of the state to comply with the discovery procedure will not automatically command reversal. The defendant must show prejudice in order for his conviction to be reversed.
 
 State v. Williams, supra.
 

 In
 
 Williams,
 
 the accused was informed on the day of trial that the state intended to use inculpatory statements he made to the police. A free and voluntary hearing was conducted, and the defense was granted a recess to review the statements. On appeal, the defendant claimed that the state had violated discovery rules by producing the statement on the day of trial. This court affirmed the conviction after holding that the defendant was not prejudiced by the admission of the statements. The defendant had been notified earlier that the state intended to use any inculpa-tory statements made by the defendant. Additionally, any prejudice.resulting from the late 112disclosure was cured because the defense was granted a recess to prepare its defense.
 
 Williams, supra.
 

 In this case, the defense requested at trial that the state provide a copy of the video recording of the defendant and his interactions with police on the day of his arrest. The defense acknowledged that the state had provided a video disk to the indigent defender’s office approximately one month prior to trial, but stated that the defense was unaware until several days before trial that the disk did not contain viewable video. The trial court granted the defense’s request and later that same day a jury was selected.
 

 The following morning, on April 13, 2010, the defense counsel, who had already begun viewing the video after receiving it that morning, requested additional time to view the remainder of the video. The
 
 *612
 
 defense was given additional time while the court considered other matters. At 1:30 p.m., the defense notified the trial court that it had approximately one hour left of the video to review. The trial court granted the defense two hours to finish viewing the video. When court reconvened at 3:30 p.m., the defense, claiming there was another ten minutes of the video left to watch, moved for a continuance, or alternatively, a stay. Both motions were denied and the defendant notified the trial court of his intention to seek supervisory review with this court.
 

 On April 14, 2010, trial testimony began when the state called Officer Frazier. At some point that afternoon, the trial court noted for the record that defendant’s writ application had not been considered by this court and set a new return date for the re-filing of defendant’s application. During 11sOfficer Mayfield’s testimony, selected portions of the video were played in open court. Later that day, following Officer Cane’s direct testimony, the trial court informed the parties that this court had granted defendant’s writ application and ordered a stay of the proceedings to give the defendant additional time to prepare his defense.
 
 State v. Lewis,
 
 45,618 (La.App.2d Cir.4/15/10), 34 So.3d 1167 (unpublished). Accordingly, the matter was stayed until April 16, 2010, at 9:30 a.m., when trial resumed.
 

 Contrary to defendant’s contention, there has been no showing that he was prejudiced by admission of the video evidence. The defense was aware in October 2009 that the state planned on using any inculpatory statements made by defendant. The defense requested such statements from the state and was provided a video purportedly containing those statements. However, the video was either blank or incompatible with the defense’s video viewing devices. Although the defense obtained the video disk one month before the trial date, defense counsel did not complain that the video could not be viewed until the day of trial.
 

 In response to defendant’s request for a continuance, the trial court recessed proceedings for almost an entire day to allow the defense to view the video. Following a free and voluntary hearing, the defense then had that evening to watch the video before trial testimony began the next day. Additionally, this court granted the defendant a recess to allow additional time to prepare his defense. Based upon this record, the trial court did not commit reversible error by allowing the state to play video of defendant’s statements to police at trial. This assignment of error lacks merit.
 

 |
 
 uSentencing
 

 The defendant contends the trial court erred in imposing an excessive sentence. Defendant argues that he is entitled to a downward departure from the mandatory sentence of life imprisonment because he needs drug rehabilitation, not incarceration, and he does not have a violent criminal history.
 

 A sentence violates La. Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless infliction of pain and suffering.
 
 State v. Smith,
 
 2001-2574 (La.1/14/03), 839 So.2d 1;
 
 State v. Dorthey,
 
 623 So.2d 1276 (La.1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice.
 
 State v. Weaver,
 
 2001-0467 (La.1/15/02), 805 So.2d 166.
 

 LSA-R.S. 15:529.1(A)(l)(b)(ii) provides: If the third felony and the two prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), ... or as a violation of the Uniform Controlled Dangerous Substances Law punishable
 
 *613
 
 by imprisoranent for ten years or more, or any other crimes punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation or suspension of sentence.
 

 Simple burglary is punishable for a period of “not more than twelve years” imprisonment. LSA-R.S. 14:62.
 

 Since the habitual offender law is constitutional in its entirety, the minimum sentences it imposes upon recidivists are also presumed to be constitutional.
 
 State v. Johnson,
 
 97-1906 (La.3/4/98), 709 So.2d 672;
 
 State v. Gay,
 
 84,371 (La.App.2d Cir.4/4/01), 784 So.2d 714. A court may 11sdepart below the minimum sentence only if it finds clear and convincing evidence in the particular case before it that would rebut the presumption of constitutionality.
 
 State v. Gay, supra.
 
 This court has held that defendant has the burden to rebut the presumption that a mandatory minimum sentence is constitutional. To do so, the defendant must “clearly and convincingly show that he is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.”
 
 Johnson, supra,
 
 709 So.2d at 676;
 
 State v. Robbins,
 
 43,240 (La.App.2d Cir.6/4/08), 986 So.2d 828,
 
 writ denied,
 
 2008-1438 (La.2/20/09), 1 So.3d 494;
 
 State v. Wade,
 
 36,295 (La.App.2d Cir.10/23/02), 832 So.2d 977,
 
 writ denied,
 
 2002-2875 (La.4/4/03), 840 So.2d 1213.
 

 Furthermore, a trial judge may not rely solely upon the nonviolent nature of the instant or past crimes as evidence which justifies rebutting the presumption of constitutionality. The lack of violence cannot be the only reason, or even the main reason, for declaring such a sentence excessive.
 
 State v. Lindsey,
 
 99-3256 (La.10/17/00), 770 So.2d 339;
 
 State v. Johnson, supra; State v. Henry,
 
 42,416 (La.App.2d Cir.9/19/07), 966 So.2d 692;
 
 State v. Wade, supra.
 

 In this case, the defendant has not shown that the trial court erred in denying his request for a downward departure from the mandatory life sentence imposed. Defendant was adjudicated a third-felony offender with prior convictions for possession with intent to distribute cocaine and simple 11fiburglary. Pursuant to LSA-R.S. 15:529.1(A)(l)(b)(ii), he was sentenced to the mandatory term of life imprisonment without the benefit of parole, probation or suspension of sentence. The defendant’s sentence is presumed constitutional; he failed to provide clear and convincing evidence to rebut that presumption. Although defendant claims he is in need of rehabilitation and not incarceration, the habitual offender statute was specifically designed to punish more severely those previously convicted under the Uniform Controlled Dangerous Substances Law.
 

 Additionally, the defendant’s claim that his prior convictions were for nonviolent crimes is insufficient, by itself, to warrant a downward departure from the mandatory life sentence. Thus, we cannot say the mandatory sentence imposed is constitutionally excessive. The assignment of error lacks merit.
 

 We have examined the record for error patent and found none.
 

 CONCLUSION
 

 For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
 

 AFFIRMED.