LOLLEY, J.
h This criminal appeal by the defendant, Ramon Green, arises from the 26th Judicial District Court, Parish of Bossier, State of Louisiana. Green was charged with attempted second degree murder, a violation of La. R.S. 14:27 and 14:30.1, and illegal use of a weapon, a violation of La. *123 R.S. 14:94. In exchange for the dismissal of the attempted murder charge, Green pled guilty to illegal use of a weapon; there was no sentencing agreement. Green was ultimately sentenced to serve 18 months’ imprisonment at hard labor, and this appeal ensued. For the following reasons, Green’s conviction and sentence are affirmed.
Facts
Following an incident on May 16, 2010, Green was charged with attempted second degree murder and illegal use of a weapon. The incident that led to the charges occurred at a rural home in Bossier Parish at about 1:00 a.m. Green ultimately agreed to plead guilty to the charge of illegal use of a weapon for dismissal of the attempted second degree murder charge. At his guilty plea hearing, the facts of the offense were recited, which facts had been developed at a meeting with all the witnesses, the police, and Green and his attorney. According to which, on May 16, 2010, Green was at the home of one of his cousins, Michael Matthews. Green and Matthews got into a fight. After the fight broke up, Green left, but returned to Matthews’ house to apologize. A second fight commenced. After that fight, Green left again, retrieved a pump shotgun, and returned to confront Matthews. Three other people were present during the confrontation, and they reported that Green pointed the shotgun at Matthews at which time |2there was a “click” sound that some attributed to the release of the safety and some attributed to the pulling of the trigger. The gun did not fire, however, and two of the witnesses said that Green then pumped the shotgun. All three of the witnesses then heard the gun make another “click,” and then the witnesses said that Green pumped the shotgun again.
At that point, most of those present, including Matthews, began to flee, but one of the witnesses, Brian Robinson, grabbed the barrel of the shotgun. At that time, the shotgun “went off,” and the barrel was “right beside [Robinson’s] head.” Robinson was temporarily deafened but otherwise uninjured. At the conclusion of this recitation, during the plea proceedings, Green agreed that these were the facts of the incident, and he pled guilty to illegal use of a weapon.
Subsequently, Green appeared for sentencing. The trial court reviewed a pre-sentence investigation report (“PSI”) that had been prepared and which included Green’s social and criminal history. Green, who was born in 1969, had a significant criminal history, which the trial court noted as follows:
• 1987: Green was charged with simple burglary of a vehicle and pled guilty to middle grade theft, for which he was placed on two years’ unsupervised probation;
• 1990: Green was charged with attempted second degree murder; he was allowed to plead guilty to aggravated battery and was sentenced to seven years’ imprisonment at hard labor;
Is* 1994: Green was charged with possession of a firearm by a convicted felon, which was quashed for untimely prosecution;
• 1996: Green was charged with aggravated battery which was reduced to a charge of simple battery and nol prossed;
• 2000: Green pled guilty to simple battery and was placed on supervised probation for one year; and,
• 2003: Green was charged with second degree battery and pled no contest to simple battery; he was again put on supervised probation for one year.
*124 Green submitted proof to the trial court that since his plea, he had successfully completed an anger management class. The trial court recited the sentence range for illegal use of weapons, zero to two years at hard labor, and stated that Green was not eligible for probation as a third-felony offender. In light of Green’s lengthy criminal history, the court sentenced him to serve 18 months’ imprisonment at hard labor, consecutive to any other he may be serving. Green’s motion to reconsider sentence was denied, and this appeal ensued.
Discussion
Green’s only assignment of error on appeal is that the trial court imposed an excessive sentence for this offense. He urges that his own family had no objection to a probated sentence in this case, that he has accepted responsibility for his actions, and that no one was injured during the incident.
|4The test applied by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects that it adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App.2d Cir.02/28/07), 953 So.2d 890, writ denied, 2007-0805 (La.03/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Landos, 419 So.2d 475 (La.1982); State v. Gill, 46,784 (La.App.2d Cir.12/14/11), 80 So.3d 719, writ denied, 2012-0164 (La.05/04/12), 88 So.3d 463. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense, and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Elmore, 46,833 (La.App.2d Cir.12/14/11), 80 So.3d 731, writ denied, 2012-0006 (La.04/27/12), 86 So.3d 627. There is no requirement that specific matters be given any particular weight at sentencing. State v. Moton, 46,607 (La.App.2d Cir.09/21/11), 73 So.3d 503, writ denied, 2011-2288 (La.03/30/12), 85 So.3d 113.
^Second, a sentence violates La. Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.01/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993). A sen tence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.01/15/02), 805 So.2d 166; State v. Lewis, 46,344 (La.App.2d Cir.05/18/11), 69 So.3d 604, writ denied, 2011-2282 (La.06/01/12), 90 So.3d 426.
The record reflects that the trial court properly considered the circumstances of this offense and Green’s criminal history to be the most significant factors in sentencing, and this demonstrates adequate compliance with La. C. Cr. P. art. 894.1. We note that Green has a long criminal history of angry and violent criminal behavior. Here, the crime in question is just another in a lengthy line of similar incidents. Particularly disturbing in this case is that Green twice left the scene, but still did not *125 calm down. Instead, Green escalated the conflict by retrieving a firearm, which he then pointed at his cousin and attempted to operate. Whether he tried to shoot his cousin is unclear from the limited facts presented, but the record is clear that the firearm was loaded and that it “went off’ during a second encounter with another of his cousins. The shotgun’s discharge was so close to Robinson’s head that he was temporarily deafened. By needlessly escalating the conflict and using a firearm to, at the least, intimidate and threaten his family members by pointing a gun at his cousin, Green created a risk of |fideath or great bodily harm to more than one person. Further, given Green’s statement in the PSI that someone else actually pulled the trigger of the shotgun, it is evident that he did not accept responsibility for the offense, despite pleading guilty to avoid a trial for attempted second degree murder.
Notably, Green’s PSI reflects that despite his steady criminal record, he managed to graduate from high school, attend some college (taking business and accounting classes), hold down employment, get married (twice) and have children, and serve as co-pastor of his Baptist church. Clearly, Green is a person with potential to live a productive and nonviolent life. However, in light of his criminal record that includes several convictions for battery and the dismissed attempted murder charge, Green’s 18-month hard labor sentence is in no way excessive. This assignment of error is without merit.
Conclusion
Considering the foregoing, the conviction and sentence of Ramon Green are affirmed.
AFFIRMED.